NATIONAL UNDERGROUND CONSTRUCTION COMPANY, INC., Plaintiff-Appellant, v. E.A. COX COMPANY, Defendant-Appellee.

First District (2nd Division)   No. 1—90—1009

Opinion filed June 25, 1991.—Rehearing denied July 30, 1991.

R.S. Maione, of Chicago, for appellant.

Thomas G. Moffitt, of McCracken & Walsh, of Chicago, for appellee.

JUSTICE COCCIA delivered the opinion of the court:

Plaintiff National Underground Construction Company, a subcontractor, appeals from a circuit court order entering summary judgment in favor of defendant E.A. Cox Company, a general contractor, in this suit based on a cause of action for breach of contract alleging that defendant owes plaintiff an additional fee for the "extra" work performed by plaintiff in making adjustments to catch basins in a sewer construction project. On appeal, plaintiff contends that the court erred in granting summary judgment and the cause should be remanded for further hearing regarding whether or not plaintiff is entitled to an additional fee for its "extra" work.

On November 21, 1986, plaintiff filed a complaint for declaratory judgment and other relief, alleging that it is a subcontractor for the construction of underground improvements. Defendant is a general contractor for construction. On January 13, 1984, defendant entered into a contract with the City of Chicago for a construction project. On February 23, 1984, defendant entered into a written contract with plaintiff as subcontractor to perform certain work. Plaintiff alleged in its complaint that defendant was to pay it $356,539.12 for "its work under the contract and for extra work," and that the "parties agreed that [defendant] was to pay $70,218.68 for the performance of the extra work."

The complaint alleges that plaintiff was actually paid "for all work performed by it except for the sum of $6,310.87, which [defendant] retained pending receipt of payment from the City of Chicago to [defendant], and the sum of $33,354.44 representing extra work, performed by [plaintiff] in accordance with the agreement by [defendant] to pay for the installation of frame and lid settings, hereinafter described, for the resurfacing on the 55th Street job."

Plaintiff alleged further that the installation of the frame and lid settings for the 55th Street resurfacing job was "extra work, not in-

cluded in the original cont[r]act of February 23, 1984," and that $33,354.44 was due for that work.

The complaint requests a declaration of the rights of the parties: "that [defendant] agreed to pay [plaintiff] for the extra work performed by [plaintiff] for the sum of $33,354.44 consisting of the installation of the frame and lid settings for the 55th Street resurfacing job"; that the price was reasonable; and that defendant also owed plaintiff $6,310.87. Plaintiff also requested an accounting from defendant for the $33,354.44, if received from the city, and the placement of such funds into a trust.

Frank Rizzo, president of plaintiff, explained at an October 10, 1989, deposition that the project consisted of performing certain sewer work which involved building catch basins. A catch basin is a precast concrete structure set into the ground. On top of the concrete structure is a cast iron frame. Later, after road work has been done, the catch basin must be adjusted to the new grade of the street. Then the frame is set, and the lids are put into place. In that frame, a lid or grate must be placed. The concrete structure is placed in the ground at the beginning of the road job.

The relevant portion of the subcontract reads:

"Section 1. The Subcontractor [plaintiff] agrees to furnish all necessary materials and/or to furnish all labor, tools, equipment, and supplies necessary to perform all work in the construction of [the project] *** in accordance with the terms and provisions of the Contract between the Owner and the Contractor, dated January 13, 1984, including all the General and Special Conditions, Drawings and Specifications and other Documents forming or by reference made a part of the Contract between the Contractor [defendant] and the Owner, all of which shall be considered part of this Subcontract by reference thereto, and the Subcontractor agrees to be bound to the Contractor and the Owner by the terms and provisions thereof.

Section 2. It is agreed that the materials to be furnished and/or work to be done by the Subcontractor are as follows: SEWER WORK AS SPECIFIED BELOW AS PER PLANS AND SPECIFICATIONS OF THE CITY OF CHICAGO.

Item No. 10—Catch Basins ***.
Item No. 18—Trench Backfill ***.
Item No. 19—Storm Sewers ***.
Item No. 24—Filling Existing Catch Basins[.]
* * *
Item No. 25—Removal of Existing Inlets ***.''

The relevant specification for Item 10 in the contract between the city and defendant reads as follows:

"ITEM 10 *CATCH BASINS, 4 FOOT DIAMETER*

This item shall consist of constructing new City of Chicago standard catch basins at locations shown on the Plans \*\*\*.

\* \* \*

*Basis of Payment.* This item will be paid for the Contract unit price each for CATCH BASINS, 4 FOOT DIAMETER, which price shall include all excavation, backfill and the setting and adjusting of all frames and lids. New frames and lids for catch basins will be paid for separately under Item 35 \*\*\* and Item 36 \*\*\*."

Specification for item 35 provides that "The installation of the frame will be paid for as part of the various construction items involved." Specification for item 36 provides that "New lids will be counted in place for payment at the Contract unit price per pound for CITY OF CHICAGO STANDARD MANHOLE AND CATCH BASIN PERFORATED OR SOLID LIDS, which price shall include the furnishing and transportation of the lid to its place of use on the project."

On December 4, 1989, defendant moved for summary judgment.

In response to defendant's motion for summary judgment, plaintiff submitted the January 11, 1990, affidavit of F.M. Aduana, the City of Chicago's resident engineer overseeing the project. Aduana stated that defendant failed to provide grades as required under the contract with the city. As a result, "the catch basins were installed not according to the proposed grade, and adjustments had to be made." Aduana states further that the city rejected defendant's bill for the extra work because the error was defendant's responsibility, not the city's. Attached to Aduana's affidavit are his notes detailing his extensive problems in attempting to get defendant to provide proper grading. "I repeatedly told [Cox] that if the elevations were not right, I will require them to correct them at no extra cost to the City."

Plaintiff also submitted the January 6, 1990, affidavit of Gene Currie, construction superintendent for defendant on the jobsite, reciting facts about an oral contract. Defendant's president, John LeFevour, asked plaintiff to install frames and lids, although plaintiff "was not awarded the contract for frame and lid item." The affidavit states further:

"At that time, E.A. Cox was faced with [the] problem of improper grade elevations and there was controversy between the

City of Chicago and E.A. Cox as to who was to blame for the improper elevation. \*\*\*

\*\*\* John LeFevour \*\*\* approached Frank Rizzo, president of [plaintiff], who was doing the catch basin work, and in my presence asked Frank Rizzo if he would make the adjustments and install the frames and lids on the catch basins because the curb and gutters gangs were being held up and it was necessary that the concrete be poured as soon as possible. Mr. LeFevour told Frank Rizzo to keep 'time' so [plaintiff] would be paid for its work."

Plaintiff also submitted the January 5, 1990, affidavit of Rizzo, which states nearly identical facts regarding the oral agreement.

Both parties attached to their trial court briefs in the summary judgment proceeding a bill which defendant submitted to the city, on behalf of plaintiff, on August 7, 1984, requesting payment for the extra work. It states: "Enclosed is the extra bill for the re-adjustment of the new catch basins to changed grades that were given after catch basins were installed." Attached to the letter were plaintiff's bills for the extra work.

On February 9, 1990, the court granted defendant's motion for summary judgment. On March 12, 1990, the court denied plaintiff's motion for reconsideration. On April 9, 1990, plaintiff filed a notice of appeal.

■■ ■ Summary judgment is proper where no genuine issues of material fact exist, and in determining whether the moving party is entitled to summary judgment, the court must strictly construe all pleadings, depositions, admissions, and affidavits against the movant and liberally in favor of the opponent. (*Vincent DiVito, Inc. v. Vollmar Clay Products Co.* (1989), 179 Ill. App. 3d 325, 534 N.E.2d 575.) Construing a contract as a matter of law is suitable for summary judgment where other facts are not in dispute. *Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 523 N.E.2d 30; *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 498 N.E.2d 697.

■ In the present case, the interpretation of specification item No. 10, which forms a part of the contract between plaintiff and defendant, may be determined as a matter of law. Item No. 10 clearly states that the basis of payment "shall include all excavation, backfill and the setting and adjusting of all frames and lids" of the catch basins. The contract does not indicate that plaintiff would receive extra payment for adjustments it made.

Plaintiff also argues, apparently in the alternative, that Rizzo's testimony implies that the grades given to him must be the *correct* grades, and that other affidavits and evidence before the court indicated the grades were not correct. Plaintiff maintains that its liability "was contingent upon the implied condition that [defendant] furnish the correct grades," and the implied condition that if incorrect grades were given, plaintiff would not be liable for the costs it expended in "correcting [defendant's] mistakes. To do so would unjustly enrich [defendant], by enabling it to apply for relief with unclean hands."

Plaintiff then argues what is possibly another alternative theory, *i.e.*, that defendant "tricked" Rizzo into doing extra work by creating "a device or scheme to defraud," where defendant's president, John LeFevour, promised Rizzo that defendant would pay extra if plaintiff would perform the extra work of adjusting for defendant's errors in placing the grade too low.

■ In regard to these additional alternative arguments, we note that a court's first step in deciding a motion for summary judgment is to analyze the pleadings in order to define the contested issues. (*Fryison v. McGee* (1982), 106 Ill. App. 3d 537, 436 N.E.2d 12; *Mastercraft Lamp Co. v. Mortek* (1960), 28 Ill. App. 2d 273, 171 N.E.2d 427. See generally 4 R. Michael, Illinois Practice, Civil Procedure Before Trial §39.6, at 256 (1989).) Only after completing that initial step will the court go behind the pleadings to determine whether a factual issue exists.

The complaint here alleges:

"4. On or about February 23rd, 1984, National entered into a written contract with Cox, as a subcontractor, for the performance of certain work described therein, a copy of which is attached hereto as Exhibit A.

5. For its work under the contract and for extra work National was to be paid the sum of $356,539.12. The parties agreed that Cox was to pay $70,218.68 for the performance of the extra work.

6. National performed all work pursuant to the terms of the said contract and agreements for extra work, in accordance with the plans and specifications pertaining to the performance of all said construction work. All work performed by National was inspected and approved as being performed in compliance with the plans and specifications, and in accordance with the terms and agreements existing by and between the parties.

7. National was paid for all work performed by it except for *** the sum of $33,354.44 representing extra work, performed

by National in accordance with the agreement by Cox to pay for the installation of frame and lid settings, hereinafter described, for the resurfacing on the 55th Street job."

The complaint does make a reference to some "agreements for extra work." Here, the complaint merely refers to the installation of the frames and lids, which we have already found is part of the written contract; and a confusing reference to an agreement to pay $70,218.68 for "extra work" and failure to pay $33,354.44 for "extra work." The complaint would serve plaintiff better if it contained factual allegations indicating the existence of an oral contract, or oral modification of the written contract. It should contain sufficient factual allegations of the existence of a contract, including whether it was written or oral, facts regarding an offer, acceptance and consideration, along with allegations of plaintiff's performance of all contractual conditions required of it, the fact of defendant's alleged breach, the existence of damages, and sufficiently definite terms, if the contract was oral, to make it enforceable. (See *Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 491 N.E.2d 795.) Nevertheless, we find the allegations sufficient to raise the issue of whether "extra work" was done which did not fall within the contract terms, *i.e.*, work which fell within the terms of a subsequent oral modification of the contract. Because we are remanding on other grounds, we suggest that plaintiff make use of the opportunity to replead these allegations to conform with the proof it has included in the record.

In looking beyond plaintiff's complaint to define the issues raised in this suit, we conclude that the record reveals the existence of genuine issues of material fact which preclude summary judgment. We highlight facts in the record that support the conclusion.

First, the affidavit of Currie, the construction superintendent for *defendant* admits that due to improper grade levels, "adjustments had to be made." LeFevour, president of defendant, "approached Frank Rizzo *** and in my presence asked Frank Rizzo if he would make the adjustments ***. Mr. LeFevour told Frank Rizzo to keep 'time' so [plaintiff] could be paid for its work."

Second, in regard to whether defendant Cox promised to pay plaintiff extra for the additional work required due to the grading problems, Rizzo's deposition and affidavit set out several conversations in which LeFevour and Currie instructed Rizzo to do the extra work, and "keep time and material and cost" records so plaintiff would get paid an additional sum.

Third, the existence of factual issues on these points is further supported by the letter which defendant sent to the city, seeking addi-

tional payment for the extra work caused by the improper grade levels and the unanticipated need for more adjustments to the catch basins.

Fourth, Aduana's affidavit states that under defendant's contract with the city, "Cox Company was required to provide the grades" but it "did not provide the grades." As a result, "the catch basins were installed not according to the proposed grades and adjustments had to be made." The city rejected Cox's "bills for such adjustments *** as not being the City's responsibility, but Cox's responsibility." Aduana's notes details Cox's error further.

Finally, in regard to whether defendant Cox set proper grades, defendant concedes in an answer to plaintiff's interrogatory that: "Grades were to have been set by Cox. Because of the mistakes in the City's plans, the City supplies all grades on the subject project." Correction of the grades was then required and "was performed by the City of Chicago."

Thus, although the complaint is inartfully drawn, the record contains strong evidence of material fact questions. We find that there are sufficient factual questions to withstand defendant's motion for summary judgment.

Finally, although the complaint seeks the $6,310.87 which represents the contract amount of 10% to be retained by defendant until the city makes its final payment, plaintiff has not argued that issue before this court. Thus, the court need not address the question.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the holdings contained herein.

Reversed and remanded.

SCARIANO, P.J., and HARTMAN, J., concur.