SECOND DIVISION

June 17, 1997

No. 1-96-0067

JOHN DOE, ANITA DOE, BERTHA DOE, BRIAN )  Appeal from the 

DOE, CAROL DOE, and LAUREL DOE, on )  Circuit Court of

Behalf of Themselves and Similarly )  Cook County

Situated Persons, )

)

Plaintiffs-Appellants, )

)

v. )

)

NORTHWESTERN UNIVERSITY, and JOHN NOE, )

Indiv. and as Their Agent,        )  Honorable

)  Julia M. Nowicki,

Defendants-Appellees. )  Judge Presiding.

JUSTICE McNULTY delivered the opinion of the court:

The six fictitiously named plaintiffs sued Northwestern University and a dental student from Northwestern's dental school for emotional harm they suffered when Northwestern sent the plaintiffs a letter informing them that a dental student who participated in their treatment had tested positive for human immunodeficiency virus (HIV), the virus that causes acquired immune deficiency syndrome (AIDS).  Defendants moved to dismiss for failure to state a cause of action, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615(b) (West 1994)), and they separately moved to dismiss pursuant to section 2-619 (735 ILCS 5/2-619(a)(9) (West 1994)). Plaintiffs appeal from the trial court's judgment dismissing the complaint with prejudice.

The six fictitiously named plaintiffs received various treatments from several students in Northwestern's dental clinic during 1990 and 1991.  On July 22, 1991, Northwestern sent a letter to all six plaintiffs, along with numerous other patients, stating:

"Recently we learned that a dental student involved in providing care to you in the Dental Clinic has tested positive for HIV ***.

We believe, based on the most current and reliable scientific evidence, that the likelihood that you were infected with the HIV virus as a result of contact with this student is extremely low.  All persons providing dental care are required to follow precautions designed to prevent the communication of diseases, including HIV.  These precautions have been taken.  However, 
we strongly recommend that you be tested for the presence of the virus
.

The Northwestern University Dental School is offering free testing for HIV." (Emphasis in original.)

Because defendants did not in the letter identify the infected student, plaintiffs feared that any of the students may have been infected.  Plaintiffs' attorneys later determined the identity of the infected student, whom they then sued under the fictitious name of John Noe.  Noe worked in Northwestern's dental clinic from June 1990 until July 1991.  He participated in electrosurgery to reduce Anita Doe's gums and in a root canal performed on her in July and August 1990.  He diagnosed Laurel Doe's fractured tooth and participated in a tooth extraction in September 1990.  He took X rays of Bertha Doe's teeth in March 1991.  Noe treated John Doe several times over the course of his year in the clinic.  The last treatment was a tooth cleaning Noe performed on May 23, 1991.  Anita, Laurel and John bled during Noe's treatments.  Noe cemented a loose tooth for Brian Doe in August 1990, and he took Carol Doe's blood pressure while discussing oral hygiene with her in February 1991.

Plaintiffs allege that both Noe and Northwestern knew Noe had tested positive for HIV by August 1990, when he treated Anita Doe.  Defendants presented affidavits denying both the testing and the knowledge, and the concurrence relies on this evidence to support its assertion that defendants here acted promptly and responsibly.  However, the affidavits merely contradict an ultimate fact stated in the complaint.  See 
Inland Real Estate Corp. v. Lyons Savings & Loan
, 153 Ill. App. 3d 848, 854, 506 N.E.2d 652 (1987).  While the evidence might have some relevance to a motion for summary judgment, it has no bearing on the motions to dismiss pursuant to section 2-615 or 2-619.  
Cioni v. Gearhart
, 201 Ill. App. 3d 853, 856-57, 559 N.E.2d 494 (1990).  Accordingly, we ignore that evidence for review of the order dismissing the complaint.  We assume that Noe tested positive for HIV, and Northwestern knew of that positive test, prior to August 1990.

Plaintiffs further alleged:

"Accidental blood trauma to the hands and fingers of dental practitioners can occur during the performance of invasive dental procedures such as teeth cleaning, extractions, fillings, drilling, root canals, injections, and other dental surgeries."

They claimed the traumas could occur even though neither the patient nor the practitioner knew of the trauma, and sometimes practitioners might conceal from their patients the occurrence of such trauma.  Plaintiffs alleged that some of the students sometimes failed to use all proper barrier precautions, like gloves.  Plaintiffs did not allege that any of them knew or believed that any dental student suffered such trauma while treating them.

Plaintiffs brought a complaint in 12 counts.  In the first count they sought certification of the class of all persons who received Northwestern's letter, with the six fictitiously named plaintiffs as class representatives.  For all subsequent counts, plaintiffs separated those whom Noe invasively treated from plaintiffs who received no such treatment.  According to plaintiffs, Anita, Laurel, Bertha and John Doe received invasive treatment, while Noe never invasively treated Brian or Carol Doe. The invasively treated plaintiffs charged defendants with breach of fiduciary duty (count II), intentional infliction of emotional distress (count IV), battery (count VI), common law fraud (count VII), consumer fraud (count XII), breach of contract (count VIII), and negligent malpractice (count X).  Brain and Carol sued for breach of fiduciary duty (count III), intentional infliction of emotional distress (count V), breach of contract (count IX), and dental malpractice (count XI).

In counts II through XII, plaintiffs alleged they "suffered physical distress and discomfort and mental pain and anguish upon learning of the possibility of infection with HIV."  Plaintiffs do not allege that any of them have ever tested positive for HIV, and in response to defendants' request, the named plaintiffs admitted that they never tested positive for HIV.  This is evidence of an affirmative matter related to an argument for defeating the claim, properly considered on a motion to dismiss pursuant to section 2-619.  
Goldstein v. Lustig
, 154 Ill. App. 3d 595, 602, 507 N.E.2d 164 (1987).  Defendants also presented the conclusions of studies which found only a very small chance of transmission of HIV in the course of medical treatment.  Although plaintiffs in their complaint emphasized that researchers could not rule out the possibility of HIV transmission from health care providers to patients, they did not allege any particular level of probability of transmission.  Defendants' evidence of an extremely small probability of such transmission is properly before the court on review of the section 2-619 motion.

The trial court dismissed counts II through XII for failure to allege actual exposure to HIV, finding that allegation necessary for recovery of damages for fear of contracting AIDS.  While plaintiffs on appeal contest the requirement of actual exposure, they do not dispute the trial court's finding that "[a]s to all counts, the plaintiffs' damages are predicated on the fear of contracting *** HIV."  The court dismissed count I and denied the motion for class certification because the named plaintiffs had no cause of action.

Plaintiffs seek reversal of the judgment as to all counts.  They argue that they have stated a cause of action for battery because they never consented to treatment by a student infected with HIV.  To state a cause of action for a battery in the course of health care, the plaintiff must allege

"a total lack of consent to medical procedures ***. *** The defendants' privilege is limited at least to acts 
substantially
 
similar
 to those to which the plaintiffs consented.  If the defendants went beyond the consent given, to perform substantially different acts, they will be liable under a theory of battery."  (Emphasis in original.)  
Gaskin v. Goldwasser
, 166 Ill. App. 3d 996, 1012, 520 N.E.2d 1085 (1988).

The United States Court of Appeals for the Seventh Circuit explained:

"Illinois law distinguishes between medical malpractice cases alleging no informed consent and those claiming a total lack of consent to the medical procedure in question.  [Citation.]  Informed consent cases concern the duty of a physician who has obtained consent to perform a medical procedure to disclose fully the risks associated with that procedure.  Such cases are viewed as negligence actions.  Total lack of consent cases involve a physician who undertakes to treat a patient without the patient's consent; absent consent, it is meaningless to require the disclosure of risks necessary to an 'informed' decision.  Rather, total lack of consent cases are treated as batteries because they involve an intentional unauthorized touching of the person of another."  
Lojuk v. Quandt
, 706 F.2d 1456, 1460 (7th Cir. 1983).

Plaintiffs here consented to all of the dental procedures; they did not know about risks associated with the procedures when Dr. Noe performed them.  In 
Faya v. Almaraz
, 329 Md. 435, 620 A.2d 327 (1993), the plaintiff sued a doctor for performing surgery on him without disclosing that the doctor was HIV positive.  The court rejected the battery claim, holding that "[t]he cause of action for lack of informed consent is one in tort for negligence, as opposed to battery or assault."  
Faya
, 329 Md. at 450 n.6, 620 A.2d at 334 n.6; see also W. Keeton, Prosser & Keeton on Torts
 §18, at 120-21 (5th ed. 1984).  We agree.  Plaintiffs separately stated their cause of action for negligence and dental malpractice based on the failure to obtain informed consent.  Therefore we affirm dismissal of count VI, in which plaintiffs sought recovery for battery.

Plaintiffs also argue that they have stated a cause of action for violation of the Consumer Fraud and Deceptive Business Practices Act (the Act) (815 ILCS 505/1 
et
 
seq.
 (West 1992)), by alleging that defendants intended plaintiffs to rely on their deceptive failure to inform plaintiffs of Noe's HIV status and that the deception occurred in the course of commerce.  See 
Siegel v. Levy Organization Development Co.
, 153 Ill. 2d 534, 542, 607 N.E.2d 194 (1992).  In 
Frahm v. Urkovich
, 113 Ill. App. 3d 580, 447 N.E.2d 1007 (1983), this court held that the Act does not apply to the actual practice of law.  The court extended the holding of 
Frahm
 to medical services in 
Feldstein v. Guinan
, 148 Ill. App. 3d 610, 615, 499 N.E.2d 535 (1986), holding that "[t]he practice of medicine is not the equivalent of an ordinary commercial enterprise."  Following 
Feldstein
 and 
Frahm
, we hold that the provision of dental services for educational purposes does not constitute "trade or commerce" within the meaning of the Act.  815 ILCS 505/2 (West 1992).  Hence, we affirm dismissal of count XII, charging violation of the Act, for failure to state a claim.

The plaintiff must allege legally cognizable damages to plead a cause of action for common law fraud (
People ex rel. Hartigan v. E&E Hauling, Inc.
, 153 Ill. 2d 473, 490, 607 N.E.2d 165 (1992)), breach of fiduciary duty (
Suppressed v. Suppressed
, 206 Ill. App. 3d 918, 925, 565 N.E.2d 101 (1990); 
Chicago City Bank & Trust Co. v. Lesman
, 186 Ill. App. 3d 697, 701, 542 N.E.2d 824 (1989)), intentional infliction of emotional distress (
McGrath v. Fahey
, 126 Ill. 2d 78, 86, 533 N.E.2d 806 (1988)), breach of contract (
National Underground Construction Co. v. E.A. Cox Co.
, 216 Ill. App. 3d 130, 136, 576 N.E.2d 283 (1991)), or medical malpractice (
Addison v. Whittenberg
, 124 Ill. 2d 287, 297, 529 N.E.2d 552 (1988)).  For all of these counts, we assume that plaintiffs have adequately alleged facts establishing defendants' duties to plaintiffs and showing that defendants breached those duties.  We confine our discussion to the adequacy of the allegations of damages.

Emotional distress constitutes legally cognizable damage only where the distress is particularly severe.  "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it."  
McGrath
, 126 Ill. 2d at 86.  Plaintiffs suggest that AIDS causes such severe panic that any reasonable fear of AIDS should be compensable, even without proof of "actual exposure."  See 
Faya
, 329 Md. at 455, 620 A.2d at 336-37; 
Castro v. New York Life Insurance Co.
, 153 Misc. 2d 1, 588 N.Y.S.2d 695 (Sup. Ct. 1991); 
Williamson v. Waldman
, 291 N.J. Super. 600, 677 A.2d 1179 (App. Div. 1996), 
cert.
 
granted
 147 N.J. 259, 686 A.2d 761 (1996).  Defendants cite more numerous cases requiring "actual exposure."  
E.g.
, 
Carroll v. Sisters of Saint Francis Health Services, Inc.
, 868 S.W.2d 585, 594 (Tenn. 1993); 
Russaw v. Martin
, 221 Ga. App. 683, 686, 472 S.E.2d 508, 512 (1996).  In 
Doe v. Surgicare of Joliet, Inc.
, 268 Ill. App. 3d 793, 797, 643 N.E.2d 1200 (1994), the court held that in the absence of proof of actual exposure, the plaintiff's fear of AIDS was "unreasonable as a matter of law."  

In 
Williamson
 the court criticized the reasoning of cases requiring proof of actual exposure:

"It cannot validly be said, as a matter of law, in the light of common knowledge, that a person who receives a puncture wound from medical waste reacts unreasonably in suffering serious psychic injury from contemplating the possibility of developing AIDS, even if only for some period of time, until it is no longer reasonable, following a series of negative tests, to apprehend that result.  ***

***

*** [C]ourts ought not to be unduly reluctant to reach results consonant with the reasonable reactions of real people as long as basic principles of tort law are preserved, including those that preclude the creation of duties that reasonably thoughtful  defendants would not foresee."  
Williamson
, 291 N.J. Super. at 604-05, 677 A.2d at 1181. 

See also 
Surgicare
, 268 Ill. App. 3d at 799-802 (Barry, J., dissenting).

The plaintiff in 
Williamson
 punctured herself on a sharp instrument improperly left in the trash.  She did not know whether the instrument had been in contact with an HIV-positive person, but she feared that she contracted HIV.  The court held:

"[AIDS] is a disease universally dreaded by the lay public.  Under those circumstances, it cannot be concluded as a matter of law that the plaintiff reacted unreasonably or unforeseeably.  Fearing that she faced serious injury as a result of exposure to HIV, it was not unreasonable that she would be greatly upset during the period of time that was necessary to obtain medical assurance that she was not infected.  It may very well be that there is some period of time after receiving a  puncture wound from medical waste during which any person would experience a range of mental reactions, from mere anxiety to actionable emotional distress,  and ought to be eligible for compensation therefor if she meets the required tests, including the serious injury standard applying to all claims based upon  infliction of emotional distress."  
Williamson
, 291 N.J. Super. at 605-06, 677 A.2d at 1181.

Although we are persuaded by the reasoning of 
Williamson
 that a reasonable person in plaintiffs' situation would foreseeably fear that he or she might have contracted HIV, we disagree with that court's conclusion that the complaint must, therefore, state a compensable claim.  
Williamson
, in effect, creates a special rule for fear of AIDS as opposed to other fears: that decision allows compensation for any reasonable fear of AIDS, regardless of the remoteness of the medically verifiable possibility of contracting the disease.  This creates a special AIDS exception to the general rule that not all reasonable fears are compensable.  See
 
Allen v. Otis Elevator Co.
, 206 Ill. App. 3d 173, 563 N.E.2d 826 (1990).  In Illinois reasonable fears are not compensable unless they reach a level of severity that would be inconsistent with an extremely remote, insubstantial possibility of contracting disease.  See 
Wetherill v. University of Chicago
, 565 F. Supp. 1553 (N.D. Ill. 1983).

A plaintiff who has suffered a physical impact and injury due to a defendant's negligence may recover for emotional distress that the injury directly causes.  
Carlinville National Bank v. Rhoads
, 63 Ill. App. 3d 502, 503, 380 N.E.2d 63 (1978).  However, commentators have argued that courts should limit recovery for emotional distress, including fear, because of

"(1) the problem of permitting legal redress for harm that is often temporary and relatively trivial; (2) the danger that claims of mental harm will be falsified or imagined; and (3) the perceived unfairness of imposing heavy and disproportionate financial burdens upon a defendant, whose conduct was only negligent, for consequences which appear remote from the 'wrongful' act."  W. Keeton, Prosser & Keeton on Torts
 §54, at 360-61 (5th ed. 1984). 

See 
Corgan v. Muehling
, 143 Ill. 2d 296, 309, 574 N.E.2d 602 (1991).

Illinois courts address these concerns by requiring medically verifiable manifestations of severe emotional distress.  See 
Corgan
, 143 Ill. 2d at 311-12.  In 
Allen
, 206 Ill. App. 3d at 183-84, the plaintiffs foreseeably experienced fear, with physical manifestations of distress, as a result of the defendant's negligence, but the court held that the foreseeable fear and distress did not reach a degree of severity that justified tort compensation.  Thus, not all negligently caused fears are compensable.

The concerns raised by Keeton and addressed in 
Corgan
 particularly apply to claims that a defendant's negligence has caused a plaintiff to fear future illness.  These concerns should lead courts in such cases to restrict recovery to compensation for severe emotional distress arising from serious fear occasioned by a substantial, medically verifiable, possibility of contracting the disease.  In 
Wetherill
 the court, interpreting Illinois law, found that a plaintiff claiming that a physical impact caused fear of cancer needed to prove "a reasonable fear, not a high degree of likelihood" of contracting the feared illness.  
Wetherill
, 565 F. Supp. at 1559.  The court noted that "the distinction is meaningful, for fears of future injury can be reasonable even where the likelihood of such injury is relatively low."  
Wetherill
, 565 F. Supp. at 1559.  The court emphasized that the plaintiffs in that case could present medical evidence of studies showing that they had an increased risk of developing cancer as a result of the defendants' negligence.

A small probability of contracting disease must be balanced against the probable harm if the disease is contracted to determine whether a plaintiff has alleged adequate grounds for recovering for severe emotional distress.  We emphasize that the relatively minor fears of the the plaintiffs in 
Allen
 are not comparable to a real, foreseeable fear of AIDS, such as plaintiffs in this case suffered; however, even a foreseeable fear of deadly disease may not be compensable if the feared contingency is too unlikely.

Where hysterical fear of a disease is sufficiently widespread, and popular knowledge concerning its etiology is limited, a plaintiff may foreseeably experience severe emotional distress without medically verifiable evidence of a substantially increased risk of contracting the disease.  Most courts have held that recovery for fear of disease should not extend to such foreseeable fears, because, as commentators have noted, such broad recovery rewards ignorance about the disease and its causes.  See Note, 
The Fear of Disease as a Compensable Injury: An Analysis of Claims Based on AIDS Phobia
, 67 St. John's L. Rev. 77 (1993); J. Maroulis, 
Can HIV-Negative Plaintiffs Recover Emotional Distress Damages for Their Fear of AIDS
, 62 Fordham L. Rev. 225 (1993).  Courts have accordingly restricted recovery to fears supported by medical evidence of an increased risk of contracting disease.  See 
Wetherill
, 565 F. Supp. at 1559-60; 
Vallery v. Southern Baptist Hospital
, 630 So. 2d 861, 866 (La. App. 1993); 
Ferrara v. Galluchio
, 5 N.Y.2d 16, 152 N.E.2d 249, 161 N.Y.S.2d 832 (1958); 
Eagle-Picher Industries, Inc. v. Cox
, 481 So. 2d 517, 528-29 (Fla. App. 1985); but see 
Anderson v. Welding Testing Laboratory, Inc.
, 304 So. 2d 351, 353 (La. 1974).  The restriction on recovery effectively requires plaintiffs to mitigate their fears by learning what they can about the likelihood that they have contracted the disease.  Thus, the restriction on recovery is an aspect of each plaintiff's

"active duty of making reasonable exertions to render the injury as light as possible.   If, by *** negligence or wilfulness, he allows the damages to be unnecessarily enhanced, the increased loss, that which was avoidable by the performance of his duty, falls upon him."  
Culligan Rock River Water Conditioning Co. v. Gearhart
, 111 Ill. App. 3d 254, 258, 443 N.E.2d 1065 (1982).

We find that plaintiffs who fear that they have contracted AIDS because of a defendant's negligence should recover damages for the time in which they reasonably feared a substantial, medically verifiable possibility of contracting AIDS.  The reasonable, compensable fear does not include the augmentation of that fear due to ignorance concerning AIDS and its transmission.  We believe this reasoning is compatible with the results of most cases requiring proof of "actual exposure": while any person stuck with a used needle should, reasonably, fear the possibility of contracting AIDS, this reasonable fear is not of a sufficient degree to be compensable, unless the plaintiff faces a particularly substantial risk of HIV infection, as, for instance, when the plaintiff learns that the used needle probably held bodily fluids of a person who had HIV.  As the court said in 
Vallery
, 630 So. 2d at 867:

"To recognize a cause of action *** when the presence of HIV is not shown (or, at the pleading stage, alleged), is clearly unsound. Fear in such situations may be genuine but it is based on speculation rather than fact."

Accord 
De Milio v. Schrager
, 285 N.J. Super. 183, 201, 666 A.2d 627, 634 (1995).

The concurrence accuses us of "stop[ping] short" and adopting a "lesser standard" than the "actual exposure" requirement the concurrence espouses.  The standard adopted herein is distinct from, not lesser than, the "actual exposure" requirement.  Under the standard stated herein, a plaintiff who has proved an "actual exposure" will recover no damages if she presents insufficient evidence that she feared a substantial, medically verifiable possibility of contracting AIDS.  Under the standard the concurrence espouses, a plaintiff may recover damages for an "actual exposure," even without evidence that she knew facts showing a substantial possibility of contracting the disease.

The concurrence presents no reason to believe the "actual exposure" requirement addresses relevant policy considerations any better than the test we adopt.  In particular, the substantial, medically verifiable possibility test directly addresses the degree to which a plaintiff's fears are based on speculation or public misconceptions rather than verifiable medical evidence of risk.  As the concurrence correctly points out, under the standard we adopt, litigation will focus on differing opinions as to what level of medically verified risk qualifies as a substantial possibility of contracting AIDS.  We believe that this is precisely the proper focus for litigation.  The parties should marshal medical evidence of the possibility of contracting the disease and argue as to whether that possibility is so substantial as to merit compensation.  The rhetoric of the concurrence would instead focus the attention of litigants and the courts on the less informative issue of whether the occurence qualifies as an "actual" exposure.

Developing case law on the medically verifiable statistical possibilities should bring convergence to a reasonable standard for compensation.  The results under this standard could hardly be more divergent than have been the results of cases purportedly applying the "actual exposure" test.  For example, in 
Burk v. Sage Products, Inc.
, 747 F. Supp. 285, 287 (E.D. Pa. 1990), where an improperly discarded needle on a hospital floor with AIDS patients stuck the plaintiff, the court held that any question concerning exposure to HIV was sufficient to defeat the claim.  In 
Vallery
, 630 So. 2d at 867-68, the plaintiff alleged only that an HIV-positive patient bled onto the plaintiff's unprotected hand.  The court found the allegations sufficient to state a claim for relief, although the plaintiff did not allege that he had any open sores or cuts and the court noted the need for expert testimony.  Compare also 
Surgicare
, 268 Ill. App. 3d 793 643 N.E.2d 1200; 
De Milio
, 285 N.J. Super. at 198-99, 666 A.2d at 634-35.

The standard we adopt meets the need for proof that the fear has a genuine basis, not based on public misconceptions, and given the inconsistent application of "actual exposure," the proposed test seems to have a better chance for consistent application.  The concurrence presents no convincing advantage to be gained by adopting the "actual exposure" requirement rather than requiring plaintiffs to present evidence that they knew facts that showed a substantial, medically verifiable possibility of contracting the feared disease.

Here, plaintiffs received letters informing them that a dental student involved in their treatment tested positive for HIV.  The letters also said that the plaintiffs faced an extremely low likelihood of HIV infection.  Although plaintiffs alleged that some dental students sometimes failed to use proper precautions, they did not allege that any plaintiff saw any dental student bleed.  Thus, when they received the letters, plaintiffs knew of only a remote possibility that the student infected with HIV may have, unbeknown to the plaintiffs, bled while treating a plaintiff, while using inadequate precautions, and while plaintiffs had blood vessels sufficiently exposed for communication of the virus.  They have alleged no adequate reason for disbelieving defendants' statement that the likelihood of infection was extremely low.  Plaintiffs' negative HIV tests accorded with the probabilities.

Defendants' letter itself shows that plaintiffs had reason to fear that they might have been infected with HIV.  However, not all reasonable fears of AIDS are compensable.  Plaintiffs have not alleged facts that could support a finding that they faced more than an extremely remote possibility of contracting AIDS.  In the absence of a particularly substantial risk of HIV infection, plaintiffs' reasonable fears were not severe enough to warrant tort compensation.  Plaintiffs have not suffered legally cognizable damages due to defendants' alleged malpractice, fraud, intentional infliction of emotional distress, or breaches of fiduciary duty or contract.  We affirm the trial court's decision dismissing those counts of the complaint.  Because the trial court correctly dismissed the named plaintiffs' alleged causes of action, it properly denied the motion for class certification and dismissed count I, the class action count.  See 
Evans v. International Village Apartments
, 165 Ill. App. 3d 1048, 1051, 520 N.E.2d 919 (1988).

The trial court properly dismissed count VI, the battery claim, because plaintiffs stated an action only for a failure to inform them of a risk, not for proceeding with a complete lack of consent.  Count XII fails to state a claim for violation of the Consumer Fraud Act because the Act does not apply to the school's normal practice of dentistry.  The court properly dismissed counts II through V and VII through XI, pursuant to section 2-619 (735 ILCS 5/2-619(a)(9) (West 1994)), on the basis of defendants' affirmative evidence that plaintiffs' reasonable fears never attained compensable severity.  Because plaintiffs never faced a medically verified substantial risk of contracting HIV, they did not suffer legally cognizable damages.  In view of the dismissal of all other counts, the court correctly dismissed the class action count.  Accordingly, we affirm the judgment dismissing the complaint in its entirety.

Affirmed.

TULLY, J., concurs.

DiVITO, P.J., specially concurs.

PRESIDING JUSTICE DiVITO specially concurring:

Although I agree with the result reached by the majority and with much of its analysis, I disagree with the standard it applies to determine whether a fear of HIV infection is compensable.  According to the majority, plaintiffs may recover damages "for the time in which they reasonably feared a substantial, medically verifiable possibility of contracting AIDS."  Slip op. at 15.  The majority states that this standard is compatible with cases requiring plaintiffs to prove actual exposure to the virus in order to recover damages based on a fear of HIV infection, but it stops short of requiring actual exposure.  I write separately because I believe that an actual exposure requirement is preferable.

According to the majority, plaintiffs' fears of HIV infection were reasonable but not severe enough to warrant tort compensation.  The majority states that plaintiffs' fears would have been compensable if they had faced "a particularly substantial risk of HIV infection," but because they did not face more than an extremely remote possibility of contracting AIDS, they did not suffer legally cognizable damages.  Slip op. at 19.  While I agree that plaintiffs failed to show that they suffered legally cognizable damages, I believe that the compensability of a claim for fear of HIV infection should depend on proof that a plaintiff was actually exposed to the virus.

To establish actual exposure, a plaintiff must show that HIV was present in the alleged disease-transmitting agent and that a medically-accepted channel of transmission for the virus existed.  See 
Madrid v. Lincoln County Medical Center
, 122 N.M. 269, 923 P.2d 1154, 1160 (1996); see also 
Vallery v. Southern Baptist Hosp.
, 630 So. 2d 861, 867 (La. App. 1993) (plaintiff must show both the presence of the virus and a channel of transmission); 
Brown v. New York City Health & Hospitals Corp
.
, 225 A.D.2d 36, 648 N.Y.S.2d 880, 886 (1996) (requiring proof of actual exposure, that is, "proof of both a scientifically-accepted method of transmission of the virus (in this case a needle puncture) and that the source of the allegedly transmitted blood or fluid was in fact HIV-positive (in this case the unfortunate infant"); 
Bain v. Wells
, 936 S.W.2d 618 (Tenn. 1997) (requiring evidence of actual exposure to the virus and evidence of a medically recognized channel of transmission).

The application of the actual exposure requirement is supported by a third district decision in this state, 
Doe v. Surgicare of Joliet, Inc.
, 268 Ill. App. 3d 793, 643 N.E.2d 1200 (1994), 
appeal denied
, 158 Ill. 2d 550, 645 N.E.2d 1357 (1994), as well as by decisions in a majority of jurisdictions.  See, 
e.g.
, 
Brzoska v. Olson
, 668 A.2d 1355 (Del. 1995); 
Russaw v. Martin
, 221 Ga. App. 683, 472 S.E.2d 508 (1996); 
Neal v. Neal
, 125 Idaho 617, 873 P.2d 871 (1994); 
Vallery v. Southern Baptist Hosp.
, 630 So. 2d 861 (La. App. 1993); 
K.A.C. v. Benson
, 527 N.W.2d 553 (Minn. 1995); 
Bain v. Wells
, 936 S.W.2d 618 (Tenn. 1997); 
Drury v. Baptist Memorial Hosp. System
, 933 S.W.2d 668 (Tex. App. 1996); 
Funeral Services by Gregory, Inc. v. Bluefield Community Hosp.
, 186 W. Va. 424, 413 S.E.2d 79 (1991), 
rev'd on other grounds
, 
Courtney v. Courtney
, 190 W. Va. 126, 437 S.E.2d 436 (1993);  
Babich v. Waukesha Memorial Hosp., Inc.
, 205 Wis. 2d 690, 556 N.W.2d 144 (Wis. App. 1996); but see 
Faya v. Almar
az
, 329 Md. 435, 620 A.2d 327 (1993); 
Williamson v. Waldman
, 291 N.J. Super. 600, 677 A.2d 1179 (App. Div. 1996).

The reasoning of these cases is persuasive.  For example, in 
Brown v. New York City Health & Hospitals Corp
.
, 225 A.D.2d 36, 648 N.Y.S.2d 880, 886 (1996), the court required a showing of actual exposure in a negligence case based on a fear of developing AIDS.  The court 
stated that the actual exposure requirement would insure that a plaintiff's fear of developing the disease has a genuine basis, that a plaintiff's fear is not based on public misconceptions, and that cases involving claims based on a fear of HIV infection are treated consistently.  The court further explained:

"Because an 'AIDS-phobia' cause of action is based on a potential future injury, the requirement of proof of actual exposure is necessary in order to insure that such a cause of action remains within the bounds of what is considered reasonably possible.  The fear of contracting AIDS depends not only upon the likelihood that the virus was transmitted during a specific incident but also upon the likelihood that infection will develop.  As one court noted, the statistical probability of contracting HIV from a single needle stick, assuming the needle was contaminated, is approximately 0.3 to 0.5 percent.  Thus, the risk of exposure to HIV where the needle cannot be traced to a previous user is less than that, although it cannot be mathematically calculated [citation]."  
Brown
, 648 N.Y.S.2d at 887. 

See also
 
Brzoska
, 668 A.2d at 1362-64; 
Russaw
, 472 S.E.2d at 511.   The court in 
K.A.C. v. Benson
, 527 N.W.2d 553 (Minn. 1995), also listed a number of policy considerations that support an actual exposure requirement:

"Proliferation of fear of AIDS claims in the absence of meaningful restrictions would run an equal risk of compromising the availability and affordability of medical, dental and malpractice insurance, medical and dental care, prescription drugs, and blood products.  Juries deliberating in fear of AIDS lawsuits would be just as likely to reach inconsistent results, discouraging early resolution or settlement of such claims.  Last but not least, the coffers of defendants and their insurers would risk being emptied to pay for the emotional suffering of the many plaintiffs uninfected by exposure to HIV or AIDS, possibly leaving inadequate compensation for plaintiffs to whom the fatal AIDS virus was actually transmitted."  
K.A.C.
, 527 N.W.2d at 559-60, quoting 
Kerins v. Hartley
, 27 Cal. App. 4th 1062, 33 Cal. Rptr. 2d 172 (1994).

For these reasons, I would require proof of actual exposure as a prerequisite to recovery in cases based on a fear of HIV infection.

In this case, plaintiffs alleged breach of contract, breach of fiduciary duty, fraud, intentional infliction of emotional distress, and medical negligence.  For all of these claims, the damages plaintiffs alleged were their fears of HIV infection.  For breach of contract and tort actions, such as these, however, a defendant is liable only for consequences that were the proximate result of its conduct and is not liable for speculative damages.  See 
Feldstein v. Guinan
, 148 Ill. App. 3d 610, 613, 499 N.E.2d 535 (1986); 
DMI, Inc. v. Country Mutual Insurance Co.
, 82 Ill. App. 3d 113, 115, 402 N.E.2d 805 (1980).  Because plaintiffs failed to allege actual exposure, their fears were based on speculation and cannot be said to have resulted from defendants' conduct.  Consequently, their damages are not legally cognizable.  See, 
e.g.
, 
Russaw v. Martin
, 221 Ga. App. 683, 472 S.E.2d 508 (1996) (without proof of actual exposure, the plaintiffs' fears were unreasonable, and damages cannot be based on imagined possibilities); 
Bain v. Wells
, 936 S.W.2d 618 (Tenn. 1997) (plaintiff failed to establish proximate cause for negligent infliction of emotional distress because he offered no evidence of actual exposure); 
Funeral Services by Gregory, Inc. v. Bluefield Community Hosp.
, 186 W. Va. 424, 413 S.E.2d 79 (1991), 
rev'd on other grounds
, 
Courtney v. Courtney
, 190 W. Va. 126, 437 S.E.2d 436 (1993) (plaintiff had no legally compensable injury because, without proof of actual exposure, his fear was unreasonable); 
Drury v. Baptist Memorial Hospital System
, 933 S.W.2d 668 (Tx. Ct. App. 1996) (a fear of HIV infection that would support an award for mental anguish must be reasonably based on circumstances showing actual exposure to a disease-causing agent; because plaintiff failed to allege actual exposure, her fear was unreasonable and, therefore, she had no damages).

Although the majority suggests a standard that approaches the actual exposure requirement, I believe that a lesser standard is insufficient.  We should require proof of actual exposure because, in addition to other public policy benefits, this standard is easier to understand and to apply.  The majority states that a plaintiff should be able to recover for a fear of HIV infection if she shows she had a reasonable fear of a "substantial, medically verifiable possibility of contracting AIDS" (slip op. at 15).  I endorse the actual exposure standard because I fear that differing opinions as to what is a "substantial possibility" of HIV infection will lead to increased litigation and divergent results in cases involving a fear of HIV infection.

The actual exposure requirement is particularly helpful to controlling litigation in cases such as this, where much of the damages plaintiffs allege arise from the letter they received.  We should commend health care providers for taking the initiative to advise patients of a risk of HIV infection, not penalize them for doing so.  By requiring proof of actual exposure, courts establish a principle of law that encourages timely notification, which is critical in controlling further spread of the virus.  See also 410 ILCS 325/5.5(b) (West 1993) (providing for the notification of patients of an HIV-infected health care provider).  The uncertainty associated with a lesser standard, on the other hand, may discourage notification.

For these reasons, I specially concur.