(No. 72713.—

JOSEPH E. SIEGEL, Appellant, v. THE LEVY ORGA-
NIZATION DEVELOPMENT COMPANY, INC., *et
al.*, Appellees.

*Opinion filed December 4, 1992.*

CLARK and BILANDIC, JJ., took no part.

Bernard L. Rivkin and Lee M. Weisz, of Braun & Rivkin, Ltd., of Chicago, for appellant.

James A. Clark and Christine D. Wright, of Schiff, Hardin & Waite, of Chicago, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

The plaintiff, Joseph E. Siegel, is a commodities trader. He and his fiancee, Kay Kimberly (now Siegel), were interested in purchasing a condominium residence with the capacity to entertain large groups of people. As the result of a newspaper advertisement, the Siegels met with Lawrence F. Levy, president of the Levy Organization, and Helen Jaeger, a vice president of that entity, to discuss the possible purchase of a condominium unit in One Magnificent Mile (OMM), a luxury development located on Michigan Avenue in Chicago.

Throughout the initial discussion and all subsequent negotiations regarding the purchase of an apartment in OMM, the Siegels expressed their desire for an apartment large enough to entertain on a lavish scale. Levy

directed the discussions toward OMM, unit 48A, which he represented would suit the Siegels' needs. Levy informed the Siegels that unit 48A would be the largest apartment in the development and that it would have a "very special terrace arrangement, whereby you could have a band there and have tables and chairs and people dancing on it." The Siegels claim that Levy referred to the terrace as a "dancing terrace." During the course of that initial meeting, Levy and Jaeger showed the Siegels a scale model of OMM which depicted unobstructed terraces. The Siegels assert that Levy's representations concerning the expansive, 500-square-foot, open terrace made unit 48A particularly attractive to them. The discussions regarding the terrace would later prove to be the provenance of this litigation.

In subsequent negotiations with the Levy Organization, the Siegels were given a sales brochure and property report which contained floor plans for unit 48A. Henry Mikolajcyk, an architect and engineer retained by Siegel as an expert witness in the instant litigation, stated that neither the floor plans contained in the 8½-by-11-inch sales brochure nor the property report disclosed the existence of free standing mullions or other obstructions on the terrace of unit 48A.

On January 26, 1981, Siegel entered into a purchase agreement with the Levy Organization for the purchase of unit 48A. The condominium's purchase price was $1.6 million.

Paragraph 3 of the purchase agreement provides that unit 48A "shall be constructed substantially in accordance with the floor plan attached as Exhibit B hereto and made a part hereof." The floor plan included architectural drawings indicating the presence of mullions on the terrace. According to Jaeger, a full-size copy of the floor plan was attached to the purchase agreement.

Siegel disputes defendants' contention that the floor plans were attached.

Edward Faron, an architect hired by Siegel in 1981 to work on the interior of the apartment, reviewed floor plans for unit 48A prepared by one of defendants' architects. During a discovery deposition, Faron testified that the drawings and plans that he reviewed did not reveal the presence of mullions on the terrace.

On November 22, 1982, Siegel entered into a first amendment to purchase agreement with the Levy Organization which incorporated some remodeling work and its added cost. In lieu of a cash earnest money deposit down payment, Siegel delivered to Levy two unconditional, irrevocable letters of credit in the sum total of $386,594.

On February 14, 1983, the Levy Organization sent Siegel a letter informing him that his letter of credit would expire on August 24, 1983. The pertinent portion of the correspondence stated:

"As you know, if we do not receive the replacement letter of credit, or the extension of the letter of credit by thirty days prior to August 24, 1983, we are entitled to draw on the letter of credit."

On March 3, 1983, Helen Jaeger sent Siegel a letter regarding the completion of the apartment. In part, the letter stated:

"We would like to advise you concerning the new estimated completion date of the purchased unit. We now estimate, based on construction of the building to date and the construction schedule, the purchased unit will be substantially completed on December 5, 1983. The estimated completion date set forth in your contract was delayed due to the adverse weather conditions last year and other causes beyond our control."

Originally, the purchase agreement had provided:

"[I]t is estimated that the purchased unit will be substantially completed by August 3, 1983 (Estimated Completion Date), subject to extensions for delays occasioned by strikes, material shortages, labor shortages, casualties, inclement weather conditions, acts of God and other causes beyond the reasonable control of seller."

Nine days after the March 3 letter informing Siegel of the new completion date, he extended the letters of credit until December 31, 1983.

In August of 1983, the Siegels viewed the partially completed apartment for the first time. They discovered that the terrace was obstructed with mullions, spaced approximately 2½ feet apart, which were centered across the length of the terrace. Siegel immediately demanded the removal of these posts. Initially, Levy responded that "[t]his is a major cost item, but one which I will bear to make you happy." Siegel was subsequently told, however, that the mullions could not be moved. According to the OMM construction superintendent, it was not practicable to erect an obstruction-free terrace for unit 48A.

On October 21, 1983, Siegel terminated the purchase agreement. Siegel demanded the return of his down payment, but the Levy Organization drew on the letters of credit which he had posted. The current litigation then ensued.

Siegel's third-amended complaint contained eight counts. Count I alleged common law fraud on the part of the Levy Organization with respect to misrepresentations as to unit 48A's terrace. Count II sought rescission on a theory of unilateral mistake by Siegel with respect to the terrace. Count III sought rescission on the basis that defendants breached the purchase agreement by failing to complete the apartment by August 3, 1983. Count IV requested rescission alleging that defendants diminished the value of Siegel's apartment when they re-

duced the price of condominiums in OMM. Count V sought recovery under section 2 of the Consumer Fraud and Deceptive Business Practices Act for the alleged misconduct. (Ill. Rev. Stat. 1987, ch. 121½, par. 262.) Count VI alleged a cause of action for breach of contract, and counts VII and VIII sought punitive damages for the alleged fraud and negligent misrepresentation.

The trial court granted the Levy Organization's motion for summary judgment on all counts of Siegel's complaint. The appellate court affirmed the award of summary judgment for counts II through VIII, but reversed the award of summary judgment as to count I, Siegel's claim for common law fraud. 219 Ill. App. 3d 579.

On appeal to this court, plaintiff raises three issues for review: (1) whether facts establishing common law fraud sufficiently state a cause of action under the Consumer Fraud and Deceptive Business Practices Act so as to preclude summary judgment as to count V; (2) whether the appellate court's affirmance of summary judgment in favor of defendants as to certain counts of plaintiff's claim without discussion or analysis constitutes error when such affirmance is inconsistent with the court's holding as to the existence of common law fraud; and (3) whether the appellate court's failure to consider, discuss, or analyze the breach of contract allegations of count III in itself constitutes reversible error.

## CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

Plaintiff first argues that the appellate court erred when it affirmed the summary judgment on the alleged violation of the Consumer Fraud Act, but at the same time found disputed issues of material fact precluding summary judgment of plaintiff's common law fraud claim. Plaintiff contends that the Consumer Fraud Act

provides broader protection than common law fraud and that the consumer need prove fewer elements to satisfy a claim under the Act. Plaintiff posits that if the transaction under scrutiny is one which falls under the ambit of the Act, then facts that establish common law fraud must also establish a statutory violation. Thus, the appellate court logically could not have reinstated the common law fraud claim and at the same time dismissed a claim subsumed under the Act requiring a lower burden of proof. We agree.

Section 2 of the Consumer Fraud and Deceptive Business Practices Act provides:

> "[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." (Ill. Rev. Stat. 1987, ch. 121½, par. 262.)

The Act also specifically provides for a private right of action. Ill. Rev. Stat. 1987, ch. 121½, par. 270a.

On its face, it appears that all a plaintiff need prove to establish a violation of the Act is: (1) a deceptive act or practice, (2) intent on the defendants' part that plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce. Significantly, the Act does not require actual reliance.

On the other hand, in order to establish a claim for common law fraud in Illinois, a plaintiff must allege and prove: (1) a false statement of material fact; (2) the party making the statement knew or believed it to be

untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury. *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 185-86.

In superimposing the elements of the two causes of action and holding them up to the light, it is unquestionable that so long as the alleged deception occurred in a course of conduct involving trade or commerce, facts satisfying a claim for common law fraud will necessarily satisfy a claim under the Act. Thus, we agree with plaintiff and find the appellate court's simultaneous reversal of summary judgment of the common law fraud claim and affirmance of summary judgment of a violation under the Act inconsistent. This conclusion does not dispose of the matter entirely, however. The question now becomes whether count I was properly reinstated.

In their brief and at oral argument, defendants strenuously argue that the appellate court erred in finding material issues of fact with regard to the fraud count and therefore this court should reinstate the trial court's dismissal of all counts of plaintiff's complaint.

The appellate court based its decision on the fact:

"It is uncontroverted that Siegel was shown a scale model of the condominium unit which failed to disclose the presence of posts or mullions. The 8½- by 11-inch OMM brochure and property report which were distributed to Siegel prior to his purchase of the unit did not disclose the existence of posts or mullions on the terrace. In addition, according to Siegel, Levy expressly stated that unit 48A would have a special terrace arrangement that would be expansive enough for a band, tables and dancing. Siegel provided the expert testimony of two architects who corroborated his testimony regarding the ab-

sence of posts or mullions on the sales brochure and property reports for OMM." (219 Ill. App. 3d at 586-87.) The appellate court found that, under these facts, the trial court improperly entered summary judgment because material issues of fact remained.

We are in accord with the appellate court's determination on this matter. The absence of mullions or posts in the model (although not to scale as the appellate court asserted), the sales brochure, the property report, and Levy's statements regarding the unique nature of the terrace arguably constitute false representations of material fact. The fact that the purchase agreement referred to floor plans containing architectural markings representing mullions diminishes this conclusion but a little—especially when the marks appear insignificant to anyone but an architect.

Viewing the facts strictly against the Levy Organization, in light of the six elements necessary for a fraud claim and the requirements for granting summary judgment, we find that the appellate court properly reinstated count I of plaintiff's complaint. Further, in light of our analysis regarding the scope of the Consumer Fraud Act, we reverse the appellate court decision and reinstate count V of plaintiff's complaint.

## DISPOSITION OF COUNTS II THROUGH VIII

Siegel next contends that the appellate court's affirmance of the trial court's order with respect to counts II through VIII, without discussion, is violative of appellate jurisprudence and creates internal inconsistencies in the opinion. We agree.

In order to develop and maintain a coherent body of law, it is imperative that reviewing courts set forth their rationale and discuss the relevant case law pertaining to the issues in a given case. This policy is embodied in Supreme Court Rule 23 (134 Ill. 2d R. 23), which admon-

ishes the appellate court to set forth "the reasons for the decision," even in cases of less than great moment. In affirming trial court decisions without disclosing the rationale, the reviewing court abdicates its role in providing future guidance.

What constitutes adequate discussion will depend upon the nature of the case and the facts and issues involved. In this case, the appellate court stated in a conclusory fashion that it found "no error in [the trial court's] grant of judgment for the Levy Organization on counts II through VIII of the complaint." In our minds, this was an insufficient discussion.

The remedy for such insufficient discussions, however, is not automatic reversal as when reversible trial errors occur in criminal cases. Rather, we now review counts II through VIII and supply the necessary rationale.

Count II of plaintiff's complaint sought rescission of the purchase agreement predicated on a theory of unilateral mistake by Siegel with respect to the terrace issue. Our appellate court has allowed rescissions of contracts based on unilateral mistakes when "the party seeking rescission shows by clear and convincing evidence that (1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking rescission; and (4) rescission can place the other party in status quo." *In re Marriage of Agustsson* (1992), 223 Ill. App. 3d 510, 519.

Defendants argue that, as a matter of law, plaintiff could not have used due care in this case. Defendants contend that plaintiff should have inquired as to the 10 rectangular markings on the full floor plan which represented mullions, regardless of the sales brochure and property report. Defendants insist that a reasonable person paying $1.6 million for a residence would have con-

sulted an architect with regard to the marks on the terrace.

Contrary to defendants' claims, however, we do not find the markings on the floor plans so conspicuous or prominent that they would have raised the reasonable person's suspicion under the circumstances. We are not prepared to say that, as a matter of law, plaintiff did not exercise due care when he failed to investigate the significance of such marks, especially when he had never been given reason to believe that the terrace he purchased had any obstructions. Thus, we reverse the lower courts' determination on this issue and reinstate count II of plaintiff's claim.

Count III of plaintiff's complaint will be addressed separately below. Plaintiff has voluntarily opted to drop count IV of his complaint and count V has already been addressed above.

Count VI of the plaintiff's third-amended complaint alleges a cause of action for breach of contract in that defendants failed to construct a condominium unit with an open expansive terrace, free of mullions. Siegel submits that since there exist triable issues of fact, which would preclude summary judgment as to fraud on this matter, there must similarly exist triable issues of fact which would preclude summary judgment on the issue of whether defendants breached the purchase agreement. We do not agree.

Paragraph 3 of the purchase agreement provides:

"The Purchased Lot [unit 48A] shall be constructed substantially in accordance with (i) the floor plan attached as Exhibit B hereto and made a part hereof ('Plans') and (ii) the outline specifications attached as Exhibit C hereto and made a part hereof ('Specifications')."

There is no question that the floor plan, Exhibit B, contained markings on the terrace that an architect would recognize as mullions. Further, there is no evidence that

defendants did not construct unit 48A in substantial accordance with the floor plan. Thus, plaintiff's claim that defendants breached the purchase agreement must fall.

Counts VII and VIII of the complaint allege that Siegel is entitled to punitive damages due to the defendants' fraud and negligent misrepresentations. Despite having found that triable issues of fact preclude summary judgment as to fraud in this matter, the appellate court affirmed the trial court's summary judgment of counts VII and VIII.

If a plaintiff can demonstrate gross deception or willful and wanton misconduct, the determination as to whether plaintiff is entitled to exemplary damages lies with the trier of fact. (*Home Savings & Loan Association v. Schneider* (1985), 108 Ill. 2d 277, 285.) In light of our reinstatement of plaintiff's fraud claims, we find that affirming summary judgment against the award of punitive damages is premature at this time. Thus we reverse and reinstate counts VII and VIII of plaintiff's complaint.

## COUNT III BREACH OF CONTRACT CLAIM

Finally, plaintiff argues that the failure of the appellate court to consider the breach of contract claims of count III constitutes an independent ground of reversible error. Count III of Siegel's complaint alleged that the defendants were in breach of the purchase agreement in that they did not complete the apartment by August 3, 1983. We feel that, as a matter of law, under the terms of the purchase agreement defendants' performance was not untimely.

The purchase agreement set a date by which unit 48A was required to be completed. According to paragraph 5(a):

"The purchase and sale of the Unit Ownership shall be closed on a date (Closing Date) following substantial com-

pletion of the Purchased Unit and inspection described in Paragraph 3(e) hereof, which date shall be designated by Seller or its agent upon not less than fourteen (14) days prior written notice to the Purchaser, or upon such earlier date as may be agreed upon by Purchaser and Seller. It is estimated that the Purchased Unit will be substantially completed by August 3, 1983 (Estimated Completion Date), subject to extension for delays occasioned by strikes, material shortages, labor shortages, casualties, inclement weather conditions, acts of God and other causes beyond the reasonable control of Seller."

Paragraph 5(a) goes on to provide:

"In the event that closing does not occur on or before December 31, 1985 (the 'Outside Closing Date'), and Purchaser is not then in default hereunder, upon Purchaser's written notice to Seller of its election to terminate, which must be given prior to notice to Purchaser of the substantial completion of the Purchased Unit and Seller's designation of the Closing Date as provided for above, Seller shall return to Purchaser the earnest money with any interest accrued thereon to which Purchaser is entitled pursuant to Paragraph 2 hereof and this Purchase Agreement shall become null and void without further liability to either Purchaser or Seller."

It appears clear on the face of the agreement that the August 3, 1983, date was only an "Estimated Completion Date" and that it was the hope of the Levy Organization to have the unit substantially completed by that time. It is equally clear that the estimated date was subject to extension for delays occasioned by strikes, material shortages, labor shortages, inclement weather, etc.

Plaintiff admittedly received a letter dated March 3, 1983, from the Levy Organization notifying him that "[t]he Estimated Completion Date set forth in [the purchase agreement] was delayed due to the adverse winter weather conditions last year [the winter of 1982-83] and other causes beyond our control." Although plaintiff introduced evidence that the winter of 1982-83 was not

more severe than an average Chicago winter, plaintiff could not show that there was no inclement weather that affected construction. In addition, plaintiff failed to present any evidence to contradict the testimony of Gary Marks, the project manager on the OMM building, that labor strikes caused delays in construction. Finally, it is undisputed that the purchased unit was completed prior to the "Outside Closing Date" of December 31, 1985. Thus, defendants timely performed their obligations under the purchase agreement and plaintiff's claim must fall.

## CONCLUSION

Given the foregoing, we reinstate plaintiff's complaint as to counts I, II, V, VII, and VIII. We affirm the trial court's summary judgment of counts III, IV, and VI. The judgment of the circuit court is affirmed in part and reversed in part, the judgment of the appellate court is affirmed in part and reversed in part, and the cause is remanded to the circuit court for further proceedings.

*Judgment of circuit court affirmed in part and reversed in part; judgment of appellate court affirmed in part and reversed in part; cause remanded.*

JUSTICES CLARK and BILANDIC took no part in the consideration or decision of this case.