MODERN STEEL TREATING COMPANY, Plaintiff-Appellant, v. LIQUID CARBONIC INDUSTRIAL/MEDICAL CORPORATION, Defendant-Appellee.

First District (3rd Division)    No. 1—96—1422

Opinion filed June 30, 1998.—Modified on denial of rehearing September 2, 1998.

Bixby & Scott, P.C., of Chicago (Roger A. Bixby, David C. Lechner, and Michone J. Kuhlman, of counsel), for appellant.

Kenneth E. Rechtoris and Carol A. Genis, both of Bell, Boyd & Lloyd, of Chicago, for appellee.

JUSTICE CAHILL delivered the modified opinion of the court:

A refurbished steel treatment furnace owned and operated by plaintiff, Modern Steel Treating Company, exploded on September 11, 1989. The furnace was destroyed and the building that housed it was damaged by fire. Modern Steel sued defendant, Liquid Carbonic, which leased the control panel for the furnace to Modern Steel and supplied the fuel.

Count I of the complaint alleged several acts of negligence by Liquid Carbonic in the design and installation of a fuel injection system, including the control panel for the furnace. Counts II and III alleged breach of oral and written warranties. Defendant moved for summary judgment. The trial court first granted summary judgment on the warranty counts, finding that the warranty language of the contract between the parties excluded recovery for damages arising out of the explosion.

Subsequently, a motion for summary judgment on the negligence count was granted. The court first ruled that the Illinois Contract Indemnification for Negligence Act (740 ILCS 3511 *et seq.* (West 1996)) did not void an indemnity clause in the contract. The court found that a clause in the contract limiting defendant's liability to its "sole negligence" was enforceable. The court interpreted "sole negligence" as absolving Liquid Carbonic of liability if Modern Steel was shown to be even partly at fault. The court then concluded that the deposition testimony of plaintiff's expert, that plaintiff may have been as much as 10% negligent, precluded recovery in light of the "sole negligence" clause.

Modern Steel treated and processed steel at a plant in Chicago, Illinois. The heat-treating process hardens the surface of steel parts, such as railcar couplings, while allowing them to retain their interior toughness. At a certain degree of heat, the furnace is injected with a special atmosphere that provides the treatment.

The furnace was located in a separate building at the rear of Modern Steel's plant. In 1988, Modern Steel made the decision to rebuild the furnace, a project that took about one year to complete. As part of this project, Liquid Carbonic leased to Modern Steel an electrical control panel to supply a nitrogen and methanol atmosphere for the furnace. The control panel was used to regulate the atmosphere in the furnace and control the flow of fuel.

Installation of the control panel followed a letter dated August 1, 1988, from Richard McMahon of Liquid Carbonic to Modern Steel.

The August 1, 1988, letter said that a "standard Bulk Gas Agreement" (BGA) would apply to Liquid Carbonic's installation of the system. At his deposition, the president of Modern Steel admitted that the BGA governed installation of the system.

Paragraph 14 of the BGA reads in part:

"INDEMNIFICATION: LIQUID shall be liable for any injury, death, or damage caused by it sole negligence ***. Except for the above, BUYER shall indemnify, defend, and save harmless LIQUID, its employees and agents, from and against all loss, liability, damage, claims, actions and proceedings, including all costs and expenses connected therewith arising directly or indirectly out of or in connection with this Agreement including, but not limited to, any loss, liability, damages, claims, actions, and proceedings caused or alleged to have been caused by the joint or concurrent negligence of LIQUID, its employees or agents. This entire provision shall survive the term of this Agreement."

In paragraph 22 of the agreement, Modern Steel and Liquid Carbonic agreed to terminate earlier agreements relating to the system. It reads in part:

"This writing constitutes the entire agreement between the parties hereto, and no change or modification may be made herein unless the same shall be in writing duly executed by BUYER and by a Vice President of LIQUID ***. This agreement terminates any prior agreements between the parties related to equipment, products, or services covered herein except for the settlement of rights already accrued under those Agreements."

After installation, Liquid Carbonic continued to "fine tune" the system through 1988 and 1989. On the date of the explosion the system was still being tested.

Modern Steel raises the following issues:

(1) whether the Illinois Construction Contract Indemnification for Negligence Act (740 ILCS 35/1 *et seq.* (West 1996)) (Indemnification Act or Act) voids paragraph 14 of the contract;

(2) whether paragraph 14, if not void, fails to exculpate Liquid Carbonic for its own negligence because (a) the control panel was not subject to the contract, (b) the reference to "sole negligence" is inclusory rather than exculpatory, or (c) the contract is ambiguous and must be interpreted against its drafter, Liquid Carbonic;

(3) whether the trial court erred in granting summary judgment on Modern Steel's breach of warranty counts; and

(4) whether the deposition testimony of Modern Steel's expert precludes the need for a jury to determine if the conduct of Modern Steel was a proximate cause of the explosion.

■ We first address the issue of whether the BGA is a construction

contract that triggers the Indemnification Act. The Indemnification Act provides:

"With respect to contracts or agreements, either public or private, for the construction, alteration, repair or maintenance of a building, structure, highway bridge, viaducts or other work dealing with construction, or for any moving, demolition or excavation connected therewith, every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence is void as against public policy and wholly unenforceable." 740 ILCS 35/1 (West 1996).

There are no factual disputes in the record about the installation work performed by Liquid Carbonic as part of the BGA. Paragraph 4 of the BGA addresses those installation activities. Paragraph 4 states:

"INSTALLATION OF STORAGE UNIT: LIQUID will plan and supervise installation of storage equipment of a size it determines to be sufficient to supply BUYER and will connect the storage equipment at the site to BUYER's distribution system. BUYER shall provide a site, concrete foundation, and protective fence for the storage unit ***."

■ Whether this language creates a contract for "the construction, alteration, repair or maintenance" of a structure are questions of contract interpretation. The interpretation and construction of an unambiguous contract are questions to be decided by a court as a matter of law. *Farm Credit Bank v. Whitlock*, 144 Ill. 2d 440, 447, 581 N.E.2d 664 (1991).

■ We believe the work required under paragraph 4 is part of an "alteration, repair or maintenance of a structure" covered by the Indemnification Act. It is undisputed that there was alteration and repair of the furnace and the building and that city construction permits were obtained. Liquid Carbonic, however, argues that construction was completed at the time of the accident and that *North River Insurance Co. v. Jones*, 275 Ill. App. 3d 175, 655 N.E.2d 987 (1995), bars application of the Indemnification Act. The argument is not supported by the record. Testing of the new furnace had not been completed and Liquid Carbonic's obligations had not ended when the explosion occurred.

Liquid Carbonic argues in the alternative that the contract was only for the lease of a nitrogen/methanol system, and the sale of nitrogen and any construction were incidental. Liquid Carbonic cites *Winston Network, Inc. v. Indiana Harbor Belt R.R. Co.*, 944 F.2d 1351, 1359 (7th Cir. 1991), and argues that, like *Winston*, this case does not involve a contract "*for* the construction, alteration, repair or maintenance of a structure*" (emphasis added) but merely has "some connec-

tion with the construction, alteration, repair or maintenance of a structure."

*Winston* involved a train collision with a painters' scaffold. After concluding that the insured had agreed to indemnify the railroad, the court held that the anti-indemnification provisions of the Indemnification Act did not apply because the railroad's licensing space for advertising, the licensee's hiring of painters, and the painters' construction of a scaffold did not involve a construction contract between the insured and the railroad. Here it is undisputed, however, that the work required under paragraph 4 was part of the contract and that the fuel could not be delivered until that work was done. As the work was a contractual prerequisite to delivery of the fuel, the argument that it was "incidental" is less than persuasive. Delivery of the fuel, and the price to be paid for it, were the last elements in a contract that contemplated refurbishment of the furnace. That refurbishment included work by Liquid Carbonic and subcontractors Liquid Carbonic hired. We believe that the BGA was a construction contract within the meaning of the Indemnification Act.

■ But that does not end our inquiry, as Liquid Carbonic recognizes. Even if the BGA is a construction contract, Liquid Carbonic argues that the language in the Indemnification Act that would void paragraph 14 of the BGA in an indemnity scenario has no application in a two-party lawsuit where the issue of indemnity does not exist, and in particular where the "sole negligence" language of the upper part of the paragraph is separated from the third-party language of the lower part of the paragraph. Liquid Carbonic describes Modern Steel's argument that the Indemnification Act applies here as "bizarre" because "no third party indemnity claim exists here." Liquid Carbonic emphasizes that "[n]o third party claim has been brought against Liquid Carbonic. Rather, this case involves the enforcement of the unequivocal contractual language relating to damage claims between the two contracting parties."

Liquid Carbonic cites no authority for the proposition that the Indemnification Act never applies to two-party suits, and the plain language of the Act suggests otherwise. The Act applies to "every covenant, promise or agreement to indemnify or hold harmless another person from that person's own negligence." 740 ILCS 35/1 (West 1996). The contract provision upon which Liquid Carbonic relies is clearly an agreement to hold Liquid Carbonic harmless for its own negligence.

We do not find it relevant that the suit here only involves the parties to the contract. The Act is no more intrusive on a party's right to contract here than in an indemnity scenario. Although third parties

are involved when indemnity is sought under a contract, the indemnity suit itself is always between the parties to the contract and has no bearing on the third party's right to recover. See *Lonigro v. Lockett*, 253 Ill. App. 3d 308, 314, 625 N.E.2d 265 (1993) (noting that whether or not tortfeasor is indemnified, that tortfeasor remains liable to the third party for his negligence).

Liquid Carbonic suggests that applying the Act in a two-party action would not serve the policy objectives of the Act. The Indemnification Act seeks to protect those injured in the construction process by ensuring that those who perform under a construction contract do not have a disincentive to exercise reasonable care because someone else has agreed to pay for damage resulting from their negligence. See *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 216-17, 676 N.E.2d 1295 (1997). This policy is served whether or not the party invoking the Act has first been sued by someone else. We note, in this context, that some of the preliminary work was done by subcontractors of Liquid Carbonic.

In its petition for rehearing, Liquid Carbonic cites two cases to support the argument that "Illinois appellate courts have held that the Indemnification Act does not apply to a 'two-party lawsuit.' " See *Intergovernmental Risk Management v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.*, 295 Ill. App. 3d 784, 692 N.E.2d 739 (1998); *Ralph Korte Construction Co. v. Springfield Mechanical Co.*, 54 Ill. App. 3d 445, 369 N.E.2d 561 (1977). But *Intergovernmental Risk* and *Korte* are distinguishable. In *Intergovernmental Risk* and *Korte*, the parties only waived their rights against each other to the extent that they were covered by property insurance. See *Intergovernmental Risk*, 295 Ill. App. 3d at 787-88; *Korte*, 54 Ill. App. 3d at 446. In both cases, the courts held that since the plaintiff's loss was covered by insurance, " 'avoidance of the burden of liability did not effect any prejudice to the interest in the safety of workers and members of the general public.' " *Intergovernmental Risk*, 295 Ill. App. 3d at 794, quoting *Korte*, 54 Ill. App. 3d at 447. The agreement to "hold harmless" in this case is not limited "to the extent covered by property insurance." *Intergovernmental Risk* and *Korte* are not applicable here.

Because the contract provision on which the trial court relied is void, we find that the trial court erred in granting summary judgment for Liquid Carbonic. We reverse summary judgment on count I and remand for further proceedings.

■ Modern Steel next argues that the trial court erred in dismissing counts II and III of the complaint based on oral and written warranties. The trial court dismissed these counts based on a reading of the warranty language in the BGA. Modern Steel's position is that the

warranties alleged in its complaint are based on oral and written representations independent of the BGA. We have already concluded that the evidentiary materials, including an admission by the president of Modern Steel, establish that the BGA was the only agreement between the parties. Modern Steel poses no argument on appeal that the warranty language of the BGA is implicated in this cause of action. That issue is waived. See *Illinois State Board of Elections v. Human Rights Comm'n*, 291 Ill. App. 3d 185, 188, 683 N.E.2d 1011 (1997). Summary judgment on the warranty counts was proper.

Affirmed in part and reversed in part; cause remanded.

LEAVITT, P.J., and GORDON, J., concur.