Gerardo PEREZ and LuAnn
Perez, Plaintiffs,

v.

McDONALD'S CORPORATION,
Defendant.

No. Civ.S–97–0641 FCD JFM.

United States District Court,
E.D. California.

Nov. 18, 1998.

Robert Zarco, Lawrence V. Ashe, Robert F. Salkowski, Zarco & Pardo, Miami, FL, Patrick J. Carter, Isman A. Hanhan, San Francisco, CA, for Plaintiffs.

H. Sinclair Kerr, Jr., Michael J. Von Loewenfeldt, Sonnenschein Nath & Rosenthal, San Francisco, CA, Alan H. Silberman, Robert H. King, Sonnenschein Nath & Rosenthal, Chicago, IL, for Defendant.

## *MEMORANDUM AND ORDER*

DAMRELL, District Judge.

This action arises from a McDonald's franchise agreement. Plaintiffs' second amended complaint alleges causes of action for (1) declaratory judgment, (2) breach of express contract, (3) violation of the California Franchise Investment Law, (4) fraudulent misrepresentation, (5) negligent misrepresentation and (6) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. The gravamen of plaintiffs' second amended complaint is that McDonald's arbitrarily withheld its consent to the sale of plaintiffs' restaurant and failed to disclose, or only partially disclosed in a misleading manner, the restrictions on the sale or transfer of their restaurant. McDonald's moves for summary judgment. Fed.R.Civ.P. 56.[1]

## BACKGROUND

Plaintiffs Gerardo and LuAnn Perez purchased the Cameron Park, California McDonald's franchise on April 4, 1988. In or about 1995, unsatisfied with the treatment they were receiving from McDonald's, plaintiffs decided to sell their restaurant. Plaintiffs submitted four prospective purchasers to McDonald's for its approval. In each case, McDonald's refused to consent to the sale citing the prospective purchasers' failure to complete the McDonald's franchisee applicant training program which it contends is "mandatory" for all prospective franchisees.

Pursuant to the Franchise Offering Circular ("FOC") provided to plaintiffs prior to acquiring their franchise, a McDonald's franchisee may not sell or assign his or her interest in the franchise without McDonald's prior written approval which will not be arbitrarily withheld. FOC, ¶ 17(I). The FOC specifically refers to paragraph 15(d) of the License Agreement for the "factors ... considered by [McDonald's] in considering such sales or assignments...." *Id.*

Paragraph 15(d) of the License Agreement, attached as an exhibit to the FOC and ultimately executed by the parties on April 4, 1988, provides in pertinent part:

> Licensee shall not sell, transfer or assign this License to any person or persons without Licensor's prior written consent. Such consent shall not be arbitrarily withheld.

---

1. Plaintiffs move to strike portions of Burton D. Cohen's, John Parker's and Robert G. Boyda's declarations submitted in support of McDonald's motion for summary judgment. Because the court does not rely on the portions of the declarations referred to in plaintiffs' motion, the court declines to rule on the motion.

In determining whether to grant or to withhold such consent, Licensor shall consider of each prospective transferee, by way of illustration, the following: (i) work experience and aptitude, (ii) financial background, (iii) character, (iv) ability to personally devote full time and best efforts to managing the Restaurant, (v) residence in the locality of the Restaurant, (vi) equity interest in the Restaurant, (vii) conflicting interests, and (viii) *such other criteria and conditions as Licensor shall then apply in the case of an application for a new License to operate a McDonald's restaurant.*

(Emphasis added).

Applicants for new restaurants are required to undergo extensive training before becoming "registered applicants." The training requirements for new applicants are set forth in paragraph 11(G)(2) of the FOC.[2] Pursuant to Paragraph 11(G)(2), applicants are required to complete the Hamburger University Basic Operations Course and the initial phase of the Registered Applicant Training Program prior to becoming a registered applicant. The Preliminary Agreement, attached to the FOC, makes it clear that McDonald's decision to offer the applicant a franchise "rests in McDonald's sole discretion." Preliminary Agreement, ¶ 9.

Based on the above, this court has already found that:

[T]he FOC makes clear the unremarkable proposition that purchasers from existing franchisees will be held to the same standards and training prerequisites as new franchisees.... [T]he FOC and License Agreement do disclose the fact that satisfactory completion of the applicant training program is a fac-

tor considered in approving sales or assignments of franchise interests, and that no sale or transfer is permitted without McDonald's advance written approval.

Memorandum of Opinion and Order, filed January 28, 1998.

Plaintiffs do not dispute that McDonald's may require prospective purchasers from existing franchisees to meet the minimum requirements imposed on new franchisees, or contend that McDonald's failed to disclose its training requirements. Opposition to McDonald's Motion for Summary Judgment ("Opposition"), 4:25–26, 11:23–26. Rather, plaintiffs contend that McDonald's may not "arbitrarily limit access to the process whereby the qualification of the prospective purchaser may be measured, i.e. training," and that McDonald's "failed to disclose the severely limited access to the McDonald's training program and the likelihood that [plaintiffs] would not be able to sell their franchise on the open market." Opposition, 4:26–5:3, 11:23–26.

## STANDARD

Summary judgment is appropriate if the record, read in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

---

**2.** Paragraph 11(G)(2) of the FOC states in pertinent part: "An applicant for a McDonald's Restaurant franchise is required to complete the initial phase of the Registered Applicant Training Program prior to becoming a registered applicant.... The applicant must also satisfactorily complete the [Hamburger University's Basic Operations Course ("BOC")]. The franchisee must complete all training to the satisfaction of McDonald's Corporation. After the applicant has success-

fully completed BOC and the initial phase of the Registered Applicant Training Program which usually takes six to nine months or more, a McDonald's Licensing Manager will evaluate all test results and input from field consultants to make a decision whether to register the applicant or not. If the applicant successfully completes this first phase of the program, he is placed on the registered applicant list...."

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## ANALYSIS

### 1. Declaratory Judgment

In Count I of their second amended complaint, plaintiffs seek a declaration of the parties' rights and obligations under the License Agreement and FOC. In their second amended complaint, "[p]laintiffs contend that they have the right to sell, transfer or assign their franchise to any qualified buyer in accordance with paragraph 15(d) of their License Agreement, which includes buyers from the open market...." Second Amended Complaint, ¶ 62.

■ "The interpretation and construction of an unambiguous contract are questions to be decided by a court as a matter of law." *Modern Steel Treating Co. v. Liquid Carbonic Indus./Medical Corp.*, 298 Ill.App.3d 349, 232 Ill.Dec. 619, 698 N.E.2d 710, 712 (1998) (citing *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill.2d 440, 163 Ill.Dec. 510, 581 N.E.2d 664 (1991)). "If the terms of a contract are clear and unambiguous, a court will give them their natural and ordinary meanings." *Xinos v. Village of Oak Brook*, 298 Ill.App.3d 520, 232 Ill.Dec. 576, 698 N.E.2d 667, 670 (1998) (citing *Old Kent Bank–St.*

*Charles N.A. v. Surwood Corp.*, 256 Ill. App.3d 221, 194 Ill.Dec. 550, 627 N.E.2d 1192 (1994)). The instrument itself is the only source for determining the intention of the parties. *Herbert Shaffer Assocs., Inc. v. First Bank of Oak Park*, 30 Ill. App.3d 647, 332 N.E.2d 703, 708 (1975) (citation omitted).

■ As set forth above (and previously held by this court), it is clear from the plain meaning of the FOC and License Agreement that satisfactory completion of the applicant training program is a factor McDonald's "shall" consider in deciding whether to grant or withhold its consent to sales or assignments of franchise interests. Accordingly, McDonald's may withhold its consent to a sale of plaintiffs' restaurant to any prospective purchaser who has not completed the applicant training program. To the extent plaintiffs' seek a declaration to the contrary, they are not entitled to such relief.[3]

■ In their opposition to McDonald's motion, plaintiffs modified their requested relief. Plaintiffs now "seek a declaration that a qualified, ready, willing and able buyer, based on reasonable standards, must be allowed to enter the McDonald's applicant training program for the purpose of further evaluations and a final determination as to whether he or she will be admitted into the System." Opposition, 4:21–24. McDonald's responds that it was under no contractual obligation to either the untrained prospective buyers or to plaintiffs to admit the untrained buyers into the training program. The court agrees.

■ The License Agreement is silent as to the requirements for admission into

---

**3.** At oral argument, plaintiffs argued that factor (viii) contained in paragraph 15(d) which reads: "such other criteria and conditions as Licensor shall then apply in the case of an application for a new License to operate a McDonald's restaurant ...," was merely a means for McDonald's to impose additional criteria in the event circumstances changed. It was not, plaintiffs contend, intended to require all prospective purchasers to comply with all the then existing requirements for new licensees, i.e. completion of the initial training program. Such an interpretation, however, is inconsistent with this court's prior ruling that "the FOC makes clear ... that purchasers from existing franchisees will be held to the same standards and training prerequisites as new franchisees." Memorandum of Opinion and Order, filed January 28, 1998 (emphasis added).

the applicant training program, and plaintiffs have not pointed to any contractual provision which (1) suggests McDonald's is under any obligation to admit prospective purchasers into its training program or (2) limits McDonald's judgment in deciding who to admit into its training program.[4] Nor can plaintiffs rely on the implied covenant of good faith and fair dealing to imply any such obligations on McDonald's or limitations on its judgment. Although every contract implies good faith and fair dealing between the parties to it, the covenant is not an independent source of duties for the parties to a contract. *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir.1992). "A lack of good faith does not by itself create a cause of action .... [i]nstead, the covenant guides the construction of explicit terms in an agreement." *Id.* (citations omitted). Stated another way, the "covenant requires that contractual discretion be exercised reasonably and not arbitrarily or capriciously." *McDonald's Corp. v. C.B. Management Co., Inc.*, 13 F.Supp.2d 705, 711 (N.D.Ill. 1998) (citation omitted). Here, the contract between the parties is silent concerning admission into the applicant training program; it is not a matter contracted to by the parties. Thus there is no contract term for the covenant to guide in the interpretation of, nor is it the subject of contractually-vested discretion.

Based on the above, the court finds McDonald's had no obligation to admit prospective purchasers into its training program, and plaintiffs could not have reasonably expected that McDonald's would enroll every "qualified" prospective purchaser in its applicant training program. Accordingly, McDonald's motion for summary judgment is granted as to Count I.

**4.** Moreover, even if plaintiffs' prospective buyers were admitted into and satisfactorily completed the initial training program, McDonald's was free to terminate their enrollment at any time *"WITH OR WITHOUT CAUSE."* Preliminary Agreement, ¶ 7 (em-

### 2. Breach Of Express Contract

In Count II of their second amended complaint, plaintiffs contend that McDonald's breached the License Agreement by arbitrarily withholding its consent to transfer plaintiffs' interest in the restaurant.

As set forth above, satisfactory completion of the applicant training program is a factor McDonald's "shall" consider in deciding whether to grant or withhold its consent to sales or assignments of franchise interests. Accordingly, McDonald's decision not to consent to the proposed sales of plaintiffs' restaurant on the ground that their prospective purchasers had not completed the applicant training program was not arbitrary. Moreover, insofar as McDonald's did not have a duty to either the prospective purchasers or to plaintiffs to enroll the prospective purchasers in the applicant training program, McDonald's decision not to admit them into the applicant training program was likewise not arbitrary. Accordingly, McDonald's motion for summary judgment is granted as to Count II.

### 3. Violation Of The California Franchise Investment Law

In Count III of their second amended complaint, plaintiffs contend that McDonald's violated the California Franchise Investment Law, Cal. Corp.Code §§ 31201 & 31301, by failing to disclose that:

(1) it had a policy of not approving the sale, transfer or assignment of a McDonald's franchise to an outside buyer and not allowing the outside open market buyer the opportunity to enroll and participate in McDonald's initial applicant training program and other training programs offered to new franchisees;

phasis in original). It would make little sense to find that McDonald's had a duty to admit plaintiffs' prospective purchasers into the training program when it was free to later terminate their enrollment, with or without cause.

(2) Plaintiffs would be able to sell their franchise to only a limited number of individuals;

(3) McDonald's controls the number of individuals who are ultimately qualified to purchase a McDonald's franchise, which control negatively affects the value of an existing franchise;

(4) it arbitrarily withholds consent for a franchisee to sell or assign his or her interest in a McDonald' store to well-qualified open-market buyers;

(5) it restricts enrollment in its training programs at its sole discretion and that it arbitrarily withholds access; and

(6) it only facilitates sales of existing restaurants to pre-approved buyers at prices substantially less than prices that are offered by open market buyers.

Second Amended Complaint, ¶ 78.

Section 31201 of the California Corporations Code makes it unlawful for any person "to offer or sell a franchise in this state by means of any written or oral communication not enumerated in Section 31200 which ... omits to state a material fact...." Section 31301 makes any person who violates Section 31201 "liable to any person (not knowing or having cause to believe that such statement was false or misleading) who, while relying upon such statement shall have purchased a franchise...." However, pursuant to Section 31304, "no such action shall be maintained to enforce any liability created under Section 31301 unless brought before the ... expiration of one year after the discovery by the plaintiff of the facts constituting such violation."

 Plaintiffs contend that they were not apprised of the true limitations on the sale of their franchise until McDonald's rejected all four of their prospective purchasers. Assuming arguendo that the limitations on the sale of the franchise were not readily apparent from the License Agreement and FOC, it is undisputed that on or about September 6, 1995, McDonald's rejected plaintiffs' first proposed purchasers, the Rimawis. In a letter dated September 6, 1995, McDonald's in-

formed plaintiffs that: (1) completion of the McDonald's franchise applicant training program is "mandatory for prospective franchisees in order to purchase a McDonald's restaurant;" (2) "Mr. Rimawi's stated willingness to enter the training program does not change our decision;" and (3) McDonald's "do[es] not preapprove any purchaser for a McDonald's restaurant subject to their future completion of McDonald's required training program." At that point, plaintiffs were put on notice that McDonald's would not consent to the transfer or sale of plaintiffs' restaurant to any prospective purchaser who had not completed the applicant training program, and that a prospective purchaser's willingness to enter the training program was irrelevant to its determinations of whether to grant or withhold its consent, as it does not preapprove any purchasers subject to their future completion of the training program.

Thus, plaintiffs knew of the alleged undisclosed facts on or about September 6, 1995. Plaintiffs, however, did not file the instant action until December 5, 1996, over one year after their discovery of such facts. Accordingly, plaintiffs' claim for violation of the California Franchise Investment Law is barred, and McDonald's motion for summary judgment is granted as to Count III.

### 4. Fraudulent And Negligent Misrepresentation

 In Counts IV and V of their second amended complaint, plaintiffs contend that McDonald's intentionally and negligently omitted from its disclosure statement its "policy or practice that it would reject the sale, transfer or assignment of a franchise to anyone other than an existing McDonald's franchisee and to one who had not yet completed McDonald's operator's training program, before allowing an open market buyer the opportunity to enroll and participate in McDonald's initial applicant training program and other training programs offered to new franchisees." Second Amended Complaint, ¶¶ 83, 90.

Because the court finds that (1) McDonald's did adequately disclose that satisfactory completion of the applicant training program is a factor considered in deciding whether to approve sales or assignments of franchise interests, and (2) access to the applicant training program was not a matter contracted to by the parties, plaintiffs cannot state a claim for fraudulent or negligent misrepresentation as a matter of law. Accordingly, McDonald's motion for summary judgment is granted as to Counts IV and V.

### 5. Violation Of The Illinois Consumer Fraud And Deceptive Business Practices Act

In Count VI of their second amended complaint, plaintiffs allege that McDonald's violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("the Act") "by engaging in unlawful, unfair and deceptive business acts and practices," including:

(A) [maintaining a] policy or practice of uniformly rejecting the sale, transfer or assignment of a franchise to anyone other than an existing McDonald's franchisee and to one who has not yet completed McDonald's operators' training program, before allowing an open market buyer the opportunity to enroll and participate in the training program;

(B) arbitrarily and capriciously withholding consent of the proposed sale of Plaintiffs' McDonald's store to well-qualified open-market buyers;

(C) wielding its power to force the devaluation and [sic] income derived from Plaintiffs' existing McDonald's store by placing competing stores in the same market area as a means of increasing market density and increasing royalties for McDonald's, while forcing Plaintiffs

into direct competition with the other McDonald's franchisees with the result being the significant erosion of a substantial portion of Plaintiffs' customer base, overall profitability, and which has diminished the market value of Plaintiffs' store;

(D) coercing and penalizing Plaintiffs and other franchisees who do not maintain memberships to the Company's "voluntary" programs and co-operatives regardless of the legal status of franchisees as being independent contractors. McDonald's targets such "non-cooperative" franchisees for removal from the System by bringing various pressures to bear on them and by denying them services normally provided to its franchisees;

(E) misrepresenting the impact of new competing stores on Plaintiffs' existing store;

(F) arbitrarily reducing the Plaintiffs' quality, service and cleanliness ("QSC") grades to create an artificial bias for denying plaintiff's expansion; and

(G) denying Plaintiffs the opportunity to operate either of the encroaching stores (El Dorado Hills and Hazel) despite their true qualifications for expansion.

Second Amended Complaint, ¶ 95.

 To establish a violation of the Act, "plaintiffs must allege and prove: (1) the misrepresentation or concealment of a material fact, (2) an intent by defendant that plaintiffs rely on the misrepresentation or concealment, and (3) the deception occurred in the conduct of trade or commerce." *Siegel v. Levy Org. Develop. Co.*, 153 Ill.2d 534, 180 Ill.Dec. 300, 607 N.E.2d 194, 198 (1992); *Dwyer v. American Express Co.*, 273 Ill.App.3d 742, 210 Ill.Dec. 375, 652 N.E.2d 1351, 1356 (1995).[5] Intent to deceive is not required. "[T]he misrep-

---

5. The Illinois Consumer Fraud and Deceptive Business Practices Act provides in pertinent part: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." Ill.Rev.Stat. ch. 815, para. 505/2 (1993).

resentation or omission may be innocent, as long as it was intended to induce plaintiff's reliance." *Mackinac v. Arcadia Nat'l Life Ins. Co.,* 271 Ill.App.3d 138, 207 Ill.Dec. 781, 648 N.E.2d 237, 239–40 (1995) (citation omitted); *see also Dwyer,* 210 Ill. Dec. 375, 652 N.E.2d at 1357. The Act is to be construed liberally to effect its purpose; however, it may not be used to transform nondeceptive and nonfraudulent omissions into actionable conduct. *Mackinac,* 207 Ill.Dec. 781, 648 N.E.2d at 240.

 As set forth above, McDonald's may withhold its consent to the sale or transfer of a franchise to anyone who has not satisfactorily completed the applicant training program. Likewise, McDonald's is under no obligation to admit prospective purchasers into its training program. Accordingly, plaintiffs' allegations that McDonald's (1) had a "policy or practice of uniformly rejecting the sale, transfer or assignment of a franchise to anyone other than an existing McDonald's franchisee and to one who has not yet completed McDonald's operators' training program, before allowing an open market buyer the opportunity to enroll and participate in the training program" and (2) arbitrarily refused to consent to plaintiffs' proposed buyers cannot form the basis of a claim under the Act.

 Similarly, this court has already held that McDonald's was under no obligation to refrain from opening restaurants near plaintiffs' franchise. The License Agreement "established a restaurant at 3556 Coach Lane, Cameron Park, California *only.*" *See* Memorandum and Order, filed May 8, 1998. Accordingly, plaintiffs' claims prefaced on the placement of franchises in "plaintiffs' market area," and McDonald's refusal to allow plaintiffs to operate the "encroaching franchises," cannot form the basis of a claim under the Act. In addition, because McDonald's was under no obligation to permit plaintiffs to operate the "encroaching franchises," plaintiffs' allegation that McDonald's "arbitrarily reduc[ed] the Plaintiffs' ... QSC

grades to create an artificial basis for denying Plaintiffs' expansion," likewise cannot form the basis of a claim under the Act.

 With respect to plaintiffs' remaining claims that McDonald's (1) coerced and penalized plaintiffs because they did not maintain membership in McDonald's "voluntary" programs and (2) misrepresented to Mr. Manu Ohri the impact of new competing franchises on plaintiffs' franchise, McDonald's contends that such conduct, even if true, does not amount to a cognizable claim under the Act.

McDonald's contends that maintaining membership in McDonald's "voluntary" programs does not involve "trade or commerce" as required under the Act. The court agrees. The Act defines the terms "trade" and "commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property ... and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." Ill Rev. Stat. ch. 815, para. 505/1(f) (1993). Retaliation for failure to participate in company programs does not constitute any type of "advertising" or "offering for sale." Nor does it constitute a "sale" or "distribution" of services or property as those terms are used in the Act. *See, e.g., Continental Assurance Co. v. Commonwealth Edison Co.,* 194 Ill.App.3d 1085, 141 Ill. Dec. 711, 551 N.E.2d 1054, 1059 (1990) (holding redemption of shares of stock does not involve trade and commerce as defined under the Act). Accordingly, such conduct cannot serve as the basis for liability under the Act.

 McDonald's further contends that representations to Mr. Ohri: (1) were estimates only and not statements of fact; (2) were not intentionally directed at plaintiffs; and (3) did not result in any damages to plaintiffs because Mr. Ohri's decision not to proceed with the purchase was based on cash flow concerns, not the impact of competing franchises.[6]

---

6. While Mr. Ohri withdrew his offer to pur- chase plaintiffs' restaurant, McDonald's in-

The Act provides in pertinent part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to ... the misrepresentation ... of a material fact, with the intent that *others rely* upon the concealment, suppression or omission of such material fact, ... in the conduct of any trade or commerce are hereby declared unlawful *whether any person has in fact been ... damaged thereby.*

Ill.Rev.Stat. ch. 815, para. 505/2 (1993).

 Clearly false or misleading estimates relating to material considerations may violate the Act so long as McDonald's intends that plaintiffs rely thereon and suffer damages as a result thereof. Plaintiffs contend that McDonald's misrepresented the impact of new competing franchises on plaintiff's franchise to Mr. Ohri in order to discourage him from purchasing plaintiff's franchise. In order to establish a violation of the Act, plaintiffs must allege and prove "intent on the defendants' part that *plaintiff* rely on the deception." *Siegel,* 180 Ill.Dec. 300, 607 N.E.2d at 198 (emphasis added).[7] Plaintiffs, however, do not argue that McDonald's intended that they rely on the alleged misrepresentation. Rather, plaintiffs contend that McDonald's intended that Mr. Ohri rely on their misrepresentation and, in turn, withdraw his purchase offer. Accordingly, the conduct alleged cannot form the basis of a claim under the Act.

While the Attorney General or State's Attorney may bring an action for injunctive relief, restitution and/or civil penalties for violations of the Act, private plaintiffs are limited to actions for actual damages.[8] The contention that McDonald's misrepresentation caused the withdrawal of Mr. Ohri's purchase offer, resulting in actual damages to plaintiffs, fails to recognize McDonald's inherent and contractual rights. As set forth above, McDonald's was entitled to withhold its consent to any sale to an individual who had not completed the applicant training program. Moreover, McDonald's was under no obligation to admit prospective purchasers into its training program.

 It is undisputed that, at the time plaintiffs requested McDonald's consent to the sale of their franchise to Mr. Ohri, Mr. Ohri had not completed the applicant training program. Accordingly, following the withdrawal of his purchase offer, McDonald's sent plaintiffs a letter (1) confirming said withdrawal and (2) informing plaintiffs that "based on the information to date, McDonald's Management was not in a position to approve this sale anyway for a number of reasons including ... [that] Mr. Ohri is not operationally qualified." [9] Thus, it would appear that even if McDonald's had represented the impact of competing franchises to Mr. Ohri in accordance with plaintiffs' assessment, and Mr. Ohri had not withdrawn his purchase offer, McDonald's still (consistent with its stated policy) would have refused to consent to the sale. Therefore, plaintiffs cannot claim actual damages as a result Mc-

formed plaintiffs that it would not have consented to the sale as Mr. Ohri had not completed the requisite training.

7. While plaintiffs claim that McDonald's misrepresented the impact of new franchises to Mr. Ohri may extend beyond a mere breach of contract claim, which is clearly not covered by the act, *see American Airlines, Inc. v. Wolens,* 513 U.S. 219, 233, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), it is more properly brought as a claim for tortious interference with a prospective economic advantage. *See Douglas Theater Corp. v. Chicago Title & Trust Co.,* 288 Ill.App.3d 880, 224 Ill.Dec. 249, 681 N.E.2d 564, 569 (1997). Plaintiffs, however,

have not alleged such a claim. Assuming plaintiffs could state such a claim, the conduct alleged constitutes a purely private wrong and, as set forth below, is not the type of conduct intended to be covered under the Act.

8. "Any person who suffers actual damages as a result of a violation of this Act committed by any other person may bring an action against such person." Ill.Rev.Stat. ch. 815, para. 505/10a (1993).

9. McDonald's position was consistent with that taken by McDonald's in rejecting plaintiffs' three prior prospective purchasers.

Donald's alleged misrepresentation to Mr. Ohri.

Finally, the above alleged conduct is not the type intended to be covered by the Act. "[T]he Act is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to address a purely private wrong." *Bankier v. First Federal Savings & Loan Ass'n of Champaign*, 225 Ill.App.3d 864, 167 Ill.Dec. 750, 588 N.E.2d 391, 398 (1992). This case involves a dispute between a franchisor and franchisee relating to the sale of the franchisee's franchise. "It is a purely private wrong between two parties and does not affect consumers generally." *See Bankier*, 588 N.E.2d at 398; *Barille v. Sears Roebuck and Co.*, 289 Ill.App.3d 171, 224 Ill.Dec. 557, 682 N.E.2d 118, 124 (1997); *Lake County Grading Co. of Libertyville, Inc. v. Advance Mechanical Contractors, Inc.*, 275 Ill.App.3d 452, 211 Ill.Dec. 299, 654 N.E.2d 1109, 1115–16 (1995). The allegations set forth in paragraph 95 of plaintiffs' second amended complaint is not the type of conduct the Act was designed to protect against, and thus, cannot form the basis of a claim under the Act. *See Lake County Grading Co.*, 211 Ill.Dec. 299, 654 N.E.2d at 1115 (citation omitted) (Act intended to cover conduct that "involves trade practices addressed to the market generally or [that] otherwise implicates consumer protection concerns.")

Accordingly, McDonald's motion for summary judgment granted as to Count VI.

## CONCLUSION

Defendant McDonald's motion for summary judgment is GRANTED. The Clerk is hereby directed to close this file.

IT IS SO ORDERED.